JACK ANDERSON, APPELLANT, V. KENNETH DAVIS, APPELLEE.

160 N. W. 2d 94

Filed June 21, 1968. No. 36900.

Wagoner & Grimminger, for appellant.

Philip T. Morgan, for appellee.

Heard before, WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

SMITH, J.

A jury found for defendant on plaintiff's claim of negligent injury during a pheasant hunt, and this appeal followed. The question is whether the district court should have directed the jury to return a verdict for plaintiff.

Plaintiff, defendant, defendant's two sons under age 12, and Floyd Hinrich went pheasant hunting in plaintiff's automobile near Fullerton, Nebraska, on October 24, 1965. From the southwest corner of a stubble field the hunters saw pheasants that were alighting on the field at approximately 7 a.m. The party quickly motored easterly a distance of approximately 200 yards to a place where plaintiff parked. There are several versions of what subsequently happened.

According to plaintiff, he parked his automobile due south of the, place where the pheasants had alighted. The two boys, unarmed, and defendant were walking north while plaintiff was walking east. When plaintiff

reached a point 75 yards away from the automobile, he looked northwest and saw their positions. The boys, facing east, were standing south of defendant. Defendant, facing east, was holding his 12-gauge shotgun at chest level in a firing position. Plaintiff's version continues: "I proceeded a little ways farther to the edge of the * * * field * * *. At that point, I turned north. I heard the shot; looked to the northwest; I seen the bird coming my direction; and about that time felt a pellet, and I dropped to the ground."

Except members of this hunting party, no one with a firearm was present in the vicinity. Plaintiff, wearing a blanket-lined jacket, felt only one pellet. It penetrated his right eye. The penetration necessitated enucleation of the eye in January 1967.

According to defendant, plaintiff had parked his automobile southwest or south-southwest of the place where the pheasants had alighted. The pace of defendant away from the automobile had been slower than that of plaintiff, defendant intending to form a line. The two men and the boys subsequently formed a line moving north-northeast. The distance between defendant at the left end and plaintiff at the right end was 80 to 100 yards. The distance between defendant and the boys was 30 yards. In the line the boys flushed a pheasant in front of them. It got up, flew north, and as it turned east at an altitude "half as high as this ceiling," defendant fired one shot. The pheasant fell dead at a place 30 or 100 yards from defendant.

Hinrich's course from the automobile had been between east and east by south. The other four, according to Hinrich, formed a "pretty good line going northeast," with the boys in the middle. Hinrich did not see the pheasant until the boys picked it up at a place 50 yards northwest of the place where plaintiff had fallen.

At the scene the three men could not account for what had happened. They discussed the possibility that the pellet had ricocheted. It was impossible, plaintiff said,

for defendant to have been at fault. Later in the morning a conversation among the three men at the Fullerton airport was overheard by Gerald Nathan, a pilot who flew plaintiff to a hospital. Nathan testified: "* * * I do remember Jack (plaintiff) saying that it was an accident, it could have happened to anybody. * * * they were all discussing as to how it could have possibly happened."

"* * * where the reasonable character of the actor's conduct is in question, its utility is to be weighed against the magnitude of the risk which it involves. * * * The amount of attention and caution required varies with the magnitude of the harm likely to be done if care is not exercised, and with the utility of the act. * * * if the act involves a risk of death or serious bodily harm, and particularly if it is capable of causing such results to a number of persons, the highest attention and caution are required even if the act has a very considerable utility. Thus those who deal with firearms, explosives * * * are required to exercise the closest attention and the most careful precautions, not only in preparing for their use but in using them." Restatement, Torts 2d, § 298, Comment b, p. 69. See, also, Naegele v. Dollen, 158 Neb. 373, 63 N. W. 2d 165, 42 A. L. R. 2d 1099; Bianki v. Greater American Exposition, 3 Neb. (Unoff.) 656, 92 N. W. 615.

The evidence established the level terrain, defendant's unobstructed view of plaintiff, and the hunting line. The location of the target relative to the positions of the parties at the time of the firing was, however, in substantial dispute. A jury might reasonably find that defendant had not been negligent. Production of a greater amount of evidence does not necessarily discharge the burden of persuasion. Beavers v. Christensen, 176 Neb. 162, 125 N. W. 2d 551.

The judgment is affirmed.

AFFIRMED.