DEAN R. FINLEY, THROUGH AND BY HIS FATHER AND NEXT FRIEND, FRED F. FINLEY, APPELLANT, V. MARK BRICKMAN, APPELLEE.

186 N. W. 2d 111

Filed April 23, 1971. No. 37751.

Kneifl, Kneifl & Byrne, for appellant.

Harold W. Kaufman and Albert G. Schatz of Gross, Welch, Vinardi, Kauffman, Schatz & Day, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

SPENCER, J.

This is an action for damages resulting from an accidental gunshot. The jury returned a verdict for the defendant. Plaintiff perfected an appeal, alleging six assignments of error: (1) Denial of plaintiff's motion for summary judgment; (2) failure to direct liability against the defendant; (3) submission of the issue of contributory negligence; (4) submission of plaintiff's specifications of negligence; (5) refusal to instruct the jury that defendant was liable unless he demonstrated he took all reasonable precautions and the rifle did not discharge as a result of his carelessness; and (6) the refusal to instruct the jury on the doctrine of res ipsa loquitur.

The accident occurred on a Saturday afternoon, May 4, 1968. Plaintiff, who was 15 years of age, and defendant, who was 16, were schoolmates and close friends. Plaintiff was spending the weekend at the home of the defendant, where, after he helped defendant with his chores the boys would swim in the Brickman pool or shoot a 22-caliber automatic rifle owned by the defendant at birds and targets in the woods on the Brickman acreage. This area was heavily wooded and overgrown with shrubs. Walking was mainly restricted to paths or deer trails. There is a dilapidated north-south, three-strand barbed wire fence to the west and near the edge of the wooded area.

After the boys finished swimming, sometime beween 3 and 4 p.m., they took the rifle into the wooded area and

alternately shot and reloaded it. Both boys had at least 50 shells. They passed the rifle back and forth between them without putting the safety on when the gun had a bullet in the chamber and was ready to fire. The rifle when fired automatically reloaded the chamber from the magazine and could be refired by simply pulling the trigger.

There is conflict in the testimony as to exactly how the accident happened. When the boys reached the barbed wire fence headed toward the house, plaintiff testified he sat down on a fallen tree which extended under the fence. He sat at a point approximately 3 feet east of the fence, which he said was old and kind of leaning, and reloaded the gun by putting in two shells. He then handed the gun to defendant who was on the other side of the fence. Defendant shot at a bird and handed the gun back to plaintiff, who was going to finish reloading it. Plaintiff's evidence would indicate that defendant handed the gun to plaintiff with his left hand, with the gun pointed toward plaintiff. Plaintiff said, "Mark, you shouldn't point it at me," and pushed toward the gun. He admitted, however, that in his deposition he said that he did not push the gun away so that it would not be pointed at him, but was just reaching up for the gun. When plaintiff put his right hand up, the rifle went off. It happened so fast plaintiff doesn't know whether or not he touched the gun. Defendant was handing the gun to him under the first strand of the fence, and from his sitting position plaintiff leaned toward the fence so that the gun was below his eye level, about shoulder height.

Defendant's version was that both boys were on the west side of the fence and were going east toward the house. Plaintiff had the rifle, put some shells in it, and handed it to him and he shot at a bird. Defendant kept the gun as they were going to cross the fence. Plaintiff went first and defendant held the fence for him by pushing down on the second strand of wire and

pulling up on the first. There was no tree under the fence and plaintiff did not sit down. The area around the fence had shrubbery but no branches or twigs. When plaintiff crossed the fence he turned around and defendant started to pass the gun to him. Defendant had the gun off to the side, pointed toward the ground. As he handed the gun to him, plaintiff leaned forward and reached out his hand to grab ahold of it, and then defendant felt a slight jerk and the gun went off. When he felt the slight jerk, he thought it was the plaintiff's hand. It could have been a bush. He doesn't know. At the time he handed the gun to the plaintiff, his fingers were at least 2 or 3 inches away from the trigger. He denies that plaintiff said anything to him about the position of the gun.

The bullet entered the plaintiff's body in line with his right breast nipple, and traversed in an oblique direction toward the abdomen from the upper right to the lower left. The bullet lodged in the hollow of the ilium, which is the big flat bone that constitutes one side of the pelvis. The bullet was not removed. Because of the nature of the issues presented, it is not necessary to detail the medical evidence other than to observe that the plaintiff made a remarkable recovery.

Obviously, plaintiff's motion for a summary judgment was properly overruled, and requires no discussion herein. Plaintiff's next four assignments will be considered together. There are essentially only two questions presented. If assumption of risk and contributory negligence are present, there is no merit to the other assignments.

The general rule in Nebraska is that those who deal with firearms are required to exercise the closest of attention and to take the most careful precautions not only in preparing for their use but in using them. Anderson v. Davis, 183 Neb. 326, 160 N. W. 2d 94.

Both the plaintiff and the defendant had been instructed in the use of guns, and were well aware of their

dangerous proclivities. Both boys were also familiar with the gun herein because they had used it on many previous occasions. Yet both were certainly negligent in handling this automatic rifle. They passed it back and forth with the safety off, without regard to the fact that it might accidentally discharge when it was in that condition. We said in Naegele v. Dollen, 158 Neb. 373, 63 N. W. 2d 165: "A person is charged with the knowledge that a loaded gun is a dangerous instrumentality, and in dealing with it he is charged with the highest degree of care to prevent injuries to others."

There is conflict in the testimony as to exactly how the accident occurred, but the resolution of the facts and the credibility of witnesses are the sole province of the jury. The verdict would suggest that the jury accepted the defendant's version of the facts rather than the plaintiff's, and we must consider the evidence on that premise.

While the gun was in the hands of the defendant when it discharged, how the accident actually happened is not known. The defendant's hand was not close enough to the trigger to fire the gun. We are left with three possibilities. The plaintiff in reaching for the gun could have touched the trigger or pushed it into a bush which discharged it, or the plaintiff could have brushed the trigger against a bush causing it to discharge. If plaintiff reached for the gun when it was pointed toward him, he would be negligent as well as careless of his own safety. He knew the gun had just been fired and that a bullet was in the chamber ready to be fired because he had put two shells into the gun. While he may not have been certain the safety on the gun was off, he was aware that on many such occasions it was. The evidence justified the submission of negligence and contributory negligence, and it was for the jury to determine its presence and degree.

Even if res ipsa loquitur were available herein, which it was not, plaintiff's last assignment of error, that the

trial court failed to instruct on res ipsa loquitur, ignores the nature of that plea. Plaintiff pleaded specific acts of negligence. As we said in Lund v. Mangelson, 183 Neb. 99, 158 N. W. 2d 223: "The doctrine of res ipsa loquitur proceeds on the theory that, under special circumstances which invoke its operation, the plaintiff is unable to specify the particular act of negligence which caused the injury, but if the petition alleges particular acts of negligence, then the plaintiff, in order to recover, must establish the specific negligence alleged, and the doctrine of res ipsa loquitur cannot be applied."

The judgment is affirmed.

AFFIRMED.