Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
02/10/2017 09:11 AM CST

Dan Anderson, appellee, v. Union Pacific
Railroad Company, a Delaware
corporation, appellant.

___ N.W.2d ___

Filed February 10, 2017.    No. S-15-1224.

1. **Federal Acts: Railroads: Claims: Courts.** In disposing of a claim controlled by the Federal Employers' Liability Act, a state court may use procedural rules applicable to civil actions in the state court unless otherwise directed by the act, but substantive issues concerning a claim under the act are determined by the provisions of the act and interpretive decisions of the federal courts construing the act.

2. **Negligence: Proof.** The essence of res ipsa loquitur is that the facts speak for themselves and lead to a proper inference of negligence by the fact finder without further proof.

3. **Negligence: Presumptions.** The doctrine of res ipsa loquitur is an exception to the general rule that negligence cannot be presumed. Res ipsa loquitur is a procedural tool that, if applicable, allows an inference of a defendant's negligence to be submitted to the fact finder, where it may be accepted or rejected.

4. **Jury Instructions.** Whether the jury instructions given by a trial court are correct is a question of law.

5. **Judgments: Appeal and Error.** When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court.

6. **Negligence.** If specific acts of negligence are alleged or there is direct evidence of the precise cause of the accident, the doctrine of res ipsa loquitur is not applicable.

7. ____. The doctrine of res ipsa loquitur is applicable only where the plaintiff is unable to allege or prove the particular act of negligence which caused the injury.

8. **Jury Instructions: Appeal and Error.** A jury instruction which misstates the issues and has a tendency to confuse the jury is erroneous.

Appeal from the District Court for Scotts Bluff County:
RANDALL L. LIPPSTREU, Judge. Reversed and vacated, and cause
remanded for a new trial.

William M. Lamson, Jr., and Cathy S. Trent-Vilim, of
Lamson, Dugan & Murray, L.L.P., and Torry N. Garland, of
Union Pacific Railroad Company, for appellant.

Kyle J. Long, Robert G. Pahlke, and Robert O. Hippe, of
Robert Pahlke Law Group, for appellee.

Nichole S. Bogen, of Sattler & Bogen, L.L.P., and Kathryn
D. Kirmayer and Daniel Saphire, of Association of American
Railroads, for amicus curiae Association of American
Railroads.

HEAVICAN, C.J., WRIGHT, CASSEL, STACY, KELCH, and
FUNKE, JJ.

KELCH, J.

## INTRODUCTION

This appeal arises from Dan Anderson's suit against Union
Pacific Railroad Company (Union Pacific) pursuant to the
Federal Employers' Liability Act (FELA) for personal injury
arising from his employment. A jury awarded Anderson dam-
ages, including past medical expenses. On appeal, Union
Pacific challenges, among other things, the jury instructions
on res ipsa loquitur. We conclude that the district court com-
mitted reversible error in instructing the jury and in overrul-
ing Union Pacific's resulting motion for new trial. Therefore,
we vacate the jury's verdict and the judgment entered against
Union Pacific. We reverse the order overruling Union Pacific's
motion for new trial and remand the cause to the district court
for a new trial consistent with this opinion.

## BACKGROUND

On October 2, 2007, Anderson fell to the floor while on
duty as a control operator for Union Pacific when the chair

in which he sat collapsed. In March 2010, Anderson brought an action against Union Pacific under FELA, asserting that permanent back injuries resulted from the fall and seeking damages. He alleged that Union Pacific was negligent in that it failed to (l) provide a safe workplace, (2) properly maintain and inspect the chair, (3) have a reasonable replacement process in place for office equipment, and (4) properly instruct its employees on how to inspect their office chairs. Union Pacific generally denied Anderson's allegations.

On October 6, 2014, Union Pacific moved in limine to exclude evidence of Anderson's medical expenses altogether, while on October 13, Anderson moved in limine to preclude Union Pacific from offering evidence at trial of the amounts it had paid to satisfy the expenses.

In January 2015, the district court sustained Anderson's motion to preclude evidence of amounts paid by Union Pacific and stated that claims for credits or offsets could be addressed by posttrial motions. The district court overruled Union Pacific's motion in limine.

In June 2015, approximately 3 months before trial, the district court granted Anderson leave to amend his complaint to allege res ipsa loquitur. The amended complaint included the original theories of negligence and added that Union Pacific had failed to provide Anderson with a chair that was safe for the purpose for which it was used, along with a claim for res ipsa loquitur.

At trial, the jury heard undisputed evidence that the cause of the chair's collapse was immediately apparent after Anderson's fall: a bolt had failed. Anderson elicited expert opinion testimony that the bolt failed because the chair was routinely used outside its load limit. However, Union Pacific's expert opined that the bolt failed because it had been overtightened by the manufacturer. Both parties presented evidence that the defect in the bolt could not be seen with the naked eye and likely could not have been discovered upon an inspection by Anderson.

The jury heard evidence that before the collapse, the chair never wobbled or required repair. Anderson testified that on the day of the accident, he observed no apparent defects and believed the chair was safe to use.

The manager of terminal operations for Anderson's terminal testified that Union Pacific did not designate employees to inspect, maintain, or repair defects in the office equipment at Anderson's terminal. Instead, Union Pacific required its employees to inspect their tools and equipment, but it did not provide them with training or instruction on how to inspect office chairs. Employees reported any defects in office equipment to their manager for replacement or repair.

According to the evidence at trial, Union Pacific had "Herman Miller Aeron B" chairs, like the chair that collapsed, in several of its terminals. Union Pacific generally documented complaints about its equipment, and it received no complaints about bolt fractures occurring with that brand of chair before or after Anderson's fall, nor did Anderson himself make any kind of complaint about his chair in particular before the fall.

Union Pacific's manager of safety testified that Union Pacific had selected the "Herman Miller Aeron B" chair in 2002 based on a specific list of criteria, including a 300-pound working load limit. The manufacturer's literature limited the weight of the chair's occupants to either 270 or 300 pounds, depending on the occupant's height. Union Pacific's manager of safety also testified that regular use of the chair by individuals who exceeded its working load limit would create excess stress that could cause the chair to break before the 12-year warranty period expired. He further stated that the chair would not be appropriate for individuals who weighed more than 300 pounds and that continual use by such individuals would constitute abuse of the chair's intended use.

The manager of terminal operations, tasked with training employees to follow safety rules in Anderson's terminal,

testified that at the time of Anderson's accident, he was not aware of any load limit for the chair that collapsed.

Ronald Wilkinson, who had worked as a control operator in Anderson's office around the time of the accident, testified that he was warned that individuals over 300 pounds should not sit in the chair that ultimately failed. Wilkinson testified that the chair was used by two Union Pacific control operators whose weight likely exceeded the 300-pound load limit. However, one of those individuals testified that he never sat in the chair, in accordance with Wilkinson's instructions not to use it because he was "too big for it." Wilkinson did not recall giving such an instruction.

Anderson testified that Union Pacific did not inform him of a 270-pound load limit for the chair, nor was he aware of Union Pacific's informing anyone else. Anderson testified that at the time of the accident, he did not exceed the chair's load limit. Anderson estimated that three control operators probably weighed more than 300 pounds, and certainly more than 270 pounds, but he did not specifically testify that these control operators used the chair.

Anderson sought a variety of nonsurgical treatments for his injuries and eventually underwent surgery to fuse his lumbar spine. Over objections by Union Pacific, the district court received evidence of Anderson's medical expenses. Union Pacific made an offer of proof to preserve the issue of its payment of Anderson's medical expenses. Union Pacific moved for a directed verdict at the close of Anderson's evidence and again at the close of Union Pacific's evidence. The district court denied the motions.

The district court instructed the jury on res ipsa loquitur and on two theories of negligence: that Union Pacific failed to provide reasonably safe equipment and that it failed to provide a safe place to work. The district court's instructions allowed for separate findings of ordinary negligence, negligence based upon res ipsa loquitur, or both. Union Pacific objected to the court's res ipsa loquitur instruction in its entirety.

The jury returned a special verdict for Anderson, finding that he had proved both specific acts of negligence causing injury and res ipsa loquitur. The jury awarded Anderson damages of $920,007, which included $266,925 for past medical expenses.

Following the verdict, Union Pacific filed a motion for judgment notwithstanding the verdict. Alternatively, it sought a setoff against the judgment and a new trial, arguing, among other things, that the district court erred in its treatment of medical expenses and in instructing the jury on res ipsa loquitur.

The district court overruled the motion for judgment notwithstanding the verdict and the motion for new trial. However, it granted the motion for setoff in the amount of $162,964.25, representing medical expenses paid by Union Pacific. This setoff did not include medical expenses written off by providers as a result of negotiations with Union Pacific, and the district court noted that Union Pacific had not paid or contributed to the writeoff.

Union Pacific now appeals. Through no fault of either party, the record does not contain a pretrial conference or closing arguments.

## ASSIGNMENTS OF ERROR

Union Pacific assigns, condensed and restated, that (1) the district court erred in overruling Union Pacific's motions for directed verdict and judgment notwithstanding the verdict; (2) Union Pacific is entitled to a new trial because portions of the record were not preserved, as requested by Union Pacific; (3) the district court erred in instructing the jury on res ipsa loquitur; (4) the district court erred in allowing Anderson to introduce irrelevant evidence of his medical expenses and refusing to allow Union Pacific to offer evidence that it paid the medical expenses; and (5) the district court erred in calculating the posttrial setoff.

## ANALYSIS

As noted above, the jury instructions allowed the jury to return a verdict making separate findings of ordinary negligence, negligence based upon res ipsa loquitur, or both. Union Pacific principally contends that the jury instructions were incorrect, because Anderson should not have been permitted to pursue a negligence claim simultaneously based on both specific acts of negligence and res ipsa loquitur. Alternatively, Union Pacific contends that the jury instructions were prejudicial, because the special verdict form confused the jury by allowing the following inconsistent findings: (1) that Anderson proved specific acts of negligence and (2) that specific acts of negligence could not be proved. We agree with Union Pacific.

[1] We begin our analysis by acknowledging that in disposing of a claim controlled by FELA, a state court may use procedural rules applicable to civil actions in the state court unless otherwise directed by the act, but substantive issues concerning a claim under FELA are determined by the provisions of the act and interpretive decisions of the federal courts construing FELA. *Kuhnel v. BNSF Railway Co.*, 287 Neb. 541, 844 N.W.2d 251 (2014). Thus, initially we must determine whether the doctrine of res ipsa loquitur is a procedural matter or substantive law.

[2,3] "'The essence of res ipsa loquitur is that the facts speak for themselves and lead to a proper inference of negligence by the fact finder without further proof.'" *Swierczek v. Lynch*, 237 Neb. 469, 477, 466 N.W.2d 512, 517 (1991), quoting *McCall v. St. Joseph's Hospital*, 184 Neb. 1, 165 N.W.2d 85 (1969). The doctrine of res ipsa loquitur is an exception to the general rule that negligence cannot be presumed. *McLaughlin Freight Lines v. Gentrup*, 281 Neb. 725, 798 N.W.2d 386 (2011). Res ipsa loquitur is a procedural tool that, if applicable, allows an inference of a defendant's negligence to be submitted to the fact finder, where it may be accepted or rejected. *Id.* See, also, *Swierczek v. Lynch,*

*supra* (res ipsa loquitur is procedural doctrine and not part of substantive law). On this point, the federal courts are in agreement that res ipsa loquitur is "not a rule of pleading, not a substantive rule of law, but a rule of evidence." *Ramsouer v. Midland Valley R. Co.*, 135 F.2d 101, 106 (8th Cir. 1943). See, also, *Weigand v. Pennsylvania Railroad Company*, 267 F.2d 281 (3d Cir. 1959). Accordingly, we shall apply Nebraska law in analyzing whether the district court erred in instructing the jury on res ipsa loquitur.

[4-7] Whether the jury instructions given by a trial court are correct is a question of law. *United Gen. Title Ins. Co. v. Malone*, 289 Neb. 1006, 1018, 858 N.W.2d 196, 210 (2015). When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court. *Id*. We have held that if specific acts of negligence are alleged or there is direct evidence of the precise cause of the accident, the doctrine of res ipsa loquitur does not apply. *Stahlecker v. Ford Motor Co.*, 266 Neb. 601, 667 N.W.2d 244 (2003). See, also, *Bargmann v. Soll Oil Co.*, 253 Neb. 1018, 574 N.W.2d 478 (1998) (simply pleading specific acts of negligence in complaint will render doctrine of res ipsa loquitur inapplicable); *Finley v. Brickman*, 186 Neb. 747, 186 N.W.2d 111 (1971) (if petition alleges particular acts of negligence, then plaintiff must establish specific negligence alleged, and doctrine of res ipsa loquitur cannot be applied). The doctrine is applicable only where the plaintiff is unable to allege or prove the particular act of negligence which caused the injury. *Long v. Hacker*, 246 Neb. 547, 520 N.W.2d 195 (1994).

Here, Anderson pled specific acts of negligence in the operative amended complaint. Further, at trial, Anderson presented direct evidence of the cause of the chair's collapse through expert testimony that the chair collapsed because a bolt failed. Further, the expert opined that the bolt failed because users exceeded the chair's load limit over a period

of time. Accordingly, the doctrine of res ipsa did not apply to this case.

Furthermore, the district court erred in instructing the jury on res ipsa loquitur in this instance. As Union Pacific notes, the jury instructions first stated that to find ordinary negligence, Anderson must prove specific acts of negligence by Union Pacific. Then, the jury was instructed that to find negligence via res ispa loquitur, it had to find that Union Pacific's specific acts of negligence could not be proved. The instructions then allowed the jury to determine whether Anderson could recover under (1) ordinary negligence, (2) negligence based on res ipsa loquitur, or (3) *both*. Notably, within the same instruction, the jury was advised that they could return a verdict finding both (1) *that specific acts of negligence by Union Pacific had been proved* and (2) *that specific acts of negligence could not be proved.* And the jury found that both were true. This is clearly a contradiction, and we cannot find that this did not cause confusion for the jury.

[8] A jury instruction which misstates the issues and has a tendency to confuse the jury is erroneous. *Long v. Hacker, supra*. If an erroneous jury instruction was prejudicial, or otherwise adversely affected a substantial right of the movant, a motion for new trial must be granted. See *Facilities Cost Mgmt. Group v. Otoe Cty. Sch. Dist.*, 291 Neb. 642, 868 N.W.2d 67 (2015). In this case, it is apparent that the res ipsa loquitur instructions' internal inconsistencies distracted the jury, which, in turn, led to the jury's inconsistent and irreconcilable verdict. Thus, the erroneous jury instructions prejudiced Union Pacific.

We conclude that the district court erred in submitting to the jury the issue of negligence based upon res ipsa loquitur and that such error prejudiced Union Pacific. We therefore vacate the verdict of the jury and remand the cause for a new trial.

Our determination that the district court committed reversible error by instructing the jury on res ipsa loquitur resolves

this appeal, and we shall not consider Union Pacific's additional assignments of error. See *Gray v. Kenney*, 290 Neb. 888, 863 N.W.2d 127 (2015) (appellate court is not obligated to engage in analysis not needed to adjudicate case and controversy before it).

## CONCLUSION

We conclude that the district court committed reversible error in instructing the jury on res ipsa loquitur. Accordingly, we vacate the jury's verdict and the judgment entered against Union Pacific. We reverse the order overruling Union Pacific's motion for new trial and remand the cause to the district court for a new trial consistent with this opinion.

Reversed and vacated, and cause
remanded for a new trial.

Miller-Lerman, J., not participating.