Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/01/2022 08:08 AM CDT

Warren Evans, appellant, v. Freedom
Healthcare, LLC, appellee.
___ N.W.2d ___

Filed April 8, 2022.    No. S-21-494.

1. **Summary Judgment: Appeal and Error.** An appellate court affirms a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.

2. \_\_\_\_: \_\_\_\_. In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and gives that party the benefit of all reasonable inferences deducible from the evidence.

3. **Malpractice: Physicians and Surgeons: Proof: Proximate Cause.** To establish a prima facie case of medical malpractice, a plaintiff must show (1) the applicable standard of care, (2) that the defendant(s) deviated from that standard of care, and (3) that this deviation was the proximate cause of the plaintiff's harm.

4. **Malpractice: Physicians and Surgeons: Expert Witnesses: Proof.** In medical malpractice cases, expert testimony by a medical professional is normally required to establish the standard of care and causation under the circumstances.

5. **Malpractice: Physicians and Surgeons: Summary Judgment: Expert Witnesses: Proof.** Once the defendant medical provider in a malpractice case presents evidence that he or she has met the standard of care, the plaintiff must normally present expert testimony to show that a material issue of fact exists preventing summary judgment.

6. **Malpractice: Physicians and Surgeons: Expert Witnesses: Proof.** In medical malpractice cases brought under the res ipsa loquitur doctrine, negligence may be inferred in three situations without affirmative proof: (1) when the act causing the injury is so palpably negligent that it may

be inferred as a matter of law, i.e., leaving foreign objects, sponges, scissors, et cetera, in the body, or amputation of a wrong member; (2) when the general experience and observation of mankind teaches that the result would not be expected without negligence; and (3) when proof by experts in an esoteric field creates an inference that negligence caused the injuries.

7. **Negligence: Proof.** There are three elements that must be met for res ipsa loquitur to apply: (1) The occurrence must be one which would not, in the ordinary course of things, happen in the absence of negligence; (2) the instrumentality which produces the occurrence must be under the exclusive control and management of the alleged wrongdoer; and (3) there must be an absence of explanation by the alleged wrongdoer.

8. **Summary Judgment: Negligence: Proof.** At the summary judgment stage of litigation, when deciding whether res ipsa loquitur applies, a court must determine whether evidence exists from which reasonable persons can say that it is more likely than not that the three elements of res ipsa loquitur have been met. If such evidence is presented, then there exists an inference of negligence which presents a question of material fact, and summary judgment is improper.

9. ____: ____: ____. In a summary judgment proceeding, the court should not weigh the evidence to determine whether res ipsa loquitur applies. Instead, the court must determine whether there is sufficient evidence from which reasonable persons could find that it is more likely than not that the three elements of res ipsa loquitur have been proved and that it is therefore more likely than not that there was negligence associated with the event.

Appeal from the District Court for Lancaster County: Jodi L. Nelson, Judge. Reversed and remanded for further proceedings.

Elizabeth A. Govaerts, of Powers Law, for appellant.

Erin C. Duggan Pemberton and Andrew D. Wurdeman, of Wolfe, Snowden, Hurd, Ahl, Sitzmann, Tannehill & Hahn, L.L.P., for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Miller-Lerman, J.
## I. NATURE OF CASE

Warren Evans sued Freedom Healthcare, LLC, in the district court for Lancaster County for medical malpractice. The complaint alleged that Freedom Healthcare was negligent when it performed hemocyte tissue autograft therapy on Evans' knees, causing a polymicrobic infection of Evans' right knee which ultimately required extensive treatment and hospitalization. Because the district court found that Evans had failed to introduce expert testimony of medical professional negligence, it granted summary judgment in favor of Freedom Healthcare. Evans appeals. Because the record presents genuine issues of material fact which preclude summary judgment, we reverse the order of the district court and remand the cause for further proceedings.

## II. STATEMENT OF FACTS

Freedom Healthcare in Lincoln, Nebraska, is a clinic that offers joint injection therapies to treat patients suffering from knee and joint pain. Freedom Healthcare claims that these joint injections help patients maintain their joints so they may postpone or avoid more invasive procedures, such as knee replacement. Evans had a long history of severe osteoarthritis and knee pain, and he received injections of hyaluronic acid into his knee at Freedom Healthcare in 2017. On February 5, 2018, Evans returned to Freedom Healthcare for another set of injections. He received hemocyte tissue autograft therapy, or "PRP," a type of viscosupplementation using platelet-rich plasma. The purpose of the injection is to treat pain and inflammation.

Tana Kenley, a physician assistant, performed the procedure. She drew blood from Evans, centrifuged the blood, prepared syringes, prepared Evans, and performed the injections. Evans recalled that his left knee was injected first, then his right, and that the same needle was used for both knees. Kenley testified that prior to an injection, she would sterilize the skin with chlorhexidine as a matter of course, and that she believed

she followed this procedure when she performed the injections on Evans. Kenley testified in her deposition that she used separate syringes for each knee.

During the day following the injections, Evans began experiencing right knee pain, and it continued to worsen. He returned to Freedom Healthcare on February 9, 2018, where he was referred to an emergency room and admitted with severe septic infection in his right knee. The infection was polymicrobial, meaning that more than one infectious agent was present. Evans underwent prolonged hospitalization and multiple surgeries for his affected knee.

Evans sued Freedom Healthcare for negligence. His complaint alleged that Freedom Healthcare acted negligently by (1) failing to properly supervise its employees, (2) failing to properly train its employees, (3) failing to take appropriate steps to ensure that its equipment was sterile, (4) failing to use proper sterile techniques, (5) failing to perform the procedure appropriately, (6) failing to monitor Evans' condition, and (7) failing to provide immediate followup care. It also alleged that in the normal course of events, an infection of this type would not happen in the absence of negligence, and it claimed that Freedom Healthcare was liable under a theory of res ipsa loquitur.

Freedom Healthcare moved for summary judgment. Evidence was received by the district court. Freedom Healthcare's expert, Dr. David Brown, testified:

> [Y]ou can't completely sterilize the skin. The risk of infection from a joint injection has been estimated to be anywhere between one in 3,000 to one in 50,000; it's an uncommon problem.
>
> I, I don't recall the last time I had an infection from a joint. It's just despite that, a study out of the U.K. [found that] 12 percent of the physicians [surveyed] had seen an infection from a joint injection.
>
> So it's not — it's rare, but it's not impossible. . . . [I]t just all comes down to there's always some risk of

infection anytime you intrude through the . . . skin into, in particular, into a joint.

An infectious disease specialist, who collaborated in Evans' treatment while he was hospitalized, stated in his consultation note that the polymicrobial infection was "undoubtedly sourced from the overlying skin."

Evans' expert, Dr. Scott Swanson, is an orthopedic surgeon licensed in Nebraska. He treated Evans while he was hospitalized. Dr. Swanson's opinions were offered through deposition testimony and an affidavit that included his March 30, 2018, report. Dr. Swanson opined that the type of infection Evans developed is not considered to be common or a routine risk of the procedure performed. He testified that he had never seen or heard of a polymicrobial infection following an injection. He stated that in his professional opinion, based on his observations as an orthopedic student and practitioner of 20 years, "this type of infection could simply not have occurred absent a significant breach in the sterile technique at some point in the process" of performing the injections. He opined that such a breach of the sterile technique is a violation of the standard of care for medical providers in the Lincoln area. In his deposition, Dr. Swanson testified that because he had not been informed regarding Freedom Healthcare's sterility protocol, if any, he was unable to form criticisms as to the sterility of the equipment used on Evans, whether Kenley followed proper sterile technique, and whether Kenley followed an appropriate procedure.

In an order granting summary judgment in favor of Freedom Healthcare, the district court concluded that res ipsa loquitur failed as a matter of law and found that Dr. Swanson's deposition testimony was internally inconsistent. The district court further concluded that Evans had failed to put forward competent expert testimony that Freedom Healthcare breached the applicable standard of care.

With respect to res ipsa loquitur, the district court stated that where the overlying skin is pierced and a needle is advanced

into the joint, the development of infection following an injection is not "'so palpably negligent'" that negligence should be inferred as a matter of law.

The district court granted summary judgment in favor of Freedom Healthcare. Evans appeals.

## III. ASSIGNMENT OF ERROR

On appeal, Evans assigns that the trial court erred when it granted summary judgment in favor of Freedom Healthcare on Evans' theories of negligence and res ipsa loquitur.

## IV. STANDARDS OF REVIEW

[1,2] An appellate court affirms a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law. *Rodriguez v. Lasting Hope Recovery Ctr.*, 308 Neb. 538, 955 N.W.2d 707 (2021). In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and gives that party the benefit of all reasonable inferences deducible from the evidence. *Lombardi v. Sedlacek*, 299 Neb. 400, 908 N.W.2d 630 (2018).

## V. ANALYSIS

As to the law, the district court concluded that Evans could not advance the res ipsa loquitur doctrine because he had alleged negligence in his original complaint. This was error.

As to the facts, the district court granted Freedom Healthcare's motion for summary judgment on the bases that Evans' expert witness, Dr. Swanson, had given inconsistent testimony and that his expert opinion regarding the standard of care was insufficient as a matter of law. Giving Evans the reasonable inferences deducible from the evidence, to which he is entitled in summary judgment proceedings, our review of the record

shows that the district court erred in both respects. As outlined below, Dr. Swanson's testimony was not inconsistent and his opinion was sufficient, thus creating a genuine issue of material fact precluding summary judgment.

The grant of summary judgment requires reversal.

## 1. Pleadings

As an initial matter, we note that in its order on summary judgment, the district court concluded that Evans could not advance the doctrine of res ipsa loquitur "as a matter of law" because he had also alleged the theory of negligence in his complaint. As we explain below, this misapplies the evidentiary rule for res ipsa loquitur at this stage of the proceedings.

Res ipsa loquitur is a procedural tool that, if applicable, allows an inference of a defendant's negligence to be submitted to the fact finder, where it may be accepted or rejected. *Anderson v. Union Pacific RR. Co.*, 295 Neb. 785, 890 N.W.2d 791 (2017). We have explained that res ipsa loquitur is "'not a rule of pleading, not a substantive rule of law, but a rule of evidence.'" *Id.* at 792, 890 N.W.2d at 796 (quoting *Ramsouer v. Midland Valley R. Co.*, 135 F.2d 101 (8th Cir. 1943)). A plaintiff alleging *and offering proof* of specific theories of negligence would necessarily preclude the fact finder from considering res ipsa loquitur, but the pleading stage does not warrant such particularity. See *Anderson v. Union Pacific RR. Co., supra*.

The district court relied on *Anderson v. Union Pacific RR. Co.* in its analysis. But the issue in *Anderson v. Union Pacific RR. Co.* was whether the trial court erred when its jury instructions submitted both negligence and res ipsa loquitur. Given the evidence of a specific act of negligence, we concluded submitting both was error. See *id.* The district court in this case erroneously applied the jury instruction lesson of *Anderson v. Union Pacific RR. Co.* to this summary judgment proceeding.

To the extent our cases could be understood to prohibit pleading both specific acts of negligence and res ipsa loquitur after the adoption of notice pleading, they are disapproved. See, e.g., *Bargmann v. Soll Oil Co.*, 253 Neb. 1018, 574 N.W.2d 478 (1998); *Finley v. Brickman*, 186 Neb. 747, 186 N.W.2d 111 (1971). A plaintiff is able to recover on a valid claim regardless of a failure to perceive the true basis of the claim at the pleading stage. See *Tryon v. City of North Platte*, 295 Neb. 706, 890 N.W.2d 784 (2017). In a notice pleading jurisdiction like Nebraska, a party is only required to set forth a short and plain statement of the claim showing that the pleader is entitled to relief. *Id*. The party is not required to plead legal theories or cite appropriate statutes so long as the pleading gives fair notice of the claims asserted. *Id*. Accordingly, the district court erred as a matter of law when it rejected Evans' invocation of res ipsa loquitur at this stage.

### RECORD

The district court found that Dr. Swanson's testimony was inconsistent, from which it erroneously reasoned Dr. Swanson believed Freedom Healthcare was free from fault, and that Dr. Swanson had expressed either no opinions or an inadequate opinion. Contrary to the district court's characterization of the evidence, Dr. Swanson's testimony was candid, but not inconsistent, and he expressed adequate opinions.

The following exchanges are illustrative.

Q. Do you have any information about the sterility of equipment used at Freedom Healthcare?

A. No.

Q. So do you have any criticisms about whether or not the equipment that was used on . . . Evans was or wasn't sterile?

A. No.

. . . .

Q. Are you familiar with the joint injection procedure at Freedom Healthcare?

A. No.

Q: So it would be fair to say you don't have a criticism of the procedure as it is because you don't know —

A: Correct.

Dr. Swanson testified in his deposition that if a sterile preparation was performed correctly before the injection, there would not be bacteria on the skin such that it could cause an infection like that which Evans developed. He explained:

My main criticism with this all along, which I have openly shared with [Evans] and his wife, is that it was my opinion that the infection could not have developed if it were not for a significant breach in sterile technique somewhere along the process. That has always been my main criticism of this case.

With respect to his opinion, Dr. Swanson testified:

The foundation for my opinion is based on nearly 20 years of experience as an orthopaedic student and practitioner and someone who specializes, really, in the diagnosis and treatment of infections. Because of the nature of my practice in nearly — the foundation in which, based on nearly 20 years of extensive experience, I have never seen or heard of an infection after an injection. It is not considered to be a common or routine risk of the procedure. And in my opinion, it can only develop after a significant breach in sterile technique somewhere in the process.

Dr. Swanson also indicated that the only way that the infection could have gotten into the joint is through an inoculation during the treatment with bacteria that do not normally exist in a closed joint.

In addition to the foregoing, Dr. Swanson's March 30, 2018, report stated:

As a result of the hemocyte tissue autograft injection on February 15, 2018, . . . Evans contracted a polymicrobial infection in his knee. That is to say, there was more than one (1) bacteria cultured from his knee infection.

In my sixteen years of practicing orthpaedic medicine, I have never seen or heardof [sic] a polymicrobial septic joint after an injection. An infectious disease specialist . . . in his consultation note opined that this was "undoubtedly source[d] from the overlying skin." In my opinion, this could only occur from a significant break in sterile technique.

Dr. Swanson's testimony and opinions are not inconsistent; instead, he expressed an absence of specific criticism due to lack of knowledge. Dr. Swanson opined this is not the type of infection that ordinarily happens in a closed joint in the absence of negligence. In several places, he opined that it was more likely than not a breach of sterile technique occurred and that such breach violated the standard of care.

### 3. Application of Law to Facts

Evans argues that summary judgment was improper because there is a genuine issue of material fact as to whether Freedom Healthcare breached the standard of care for administering the knee injection. We examine Evans' theories of recovery below and apply the facts in the record recited above to each theory.

### (a) Negligence

[3-5] To establish a prima facie case of medical malpractice, a plaintiff must show (1) the applicable standard of care, (2) that the defendant(s) deviated from that standard of care, and (3) that this deviation was the proximate cause of the plaintiff's harm. *Hemsley v. Langdon*, 299 Neb. 464, 909 N.W.2d 59 (2018). In medical malpractice cases, expert testimony by a medical professional is normally required to establish the standard of care and causation under the circumstances. *Lombardo v. Sedlacek*, 299 Neb. 400, 908 N.W.2d 630 (2018). Therefore, once the defendant medical provider in a malpractice case presents evidence that he or she has met the standard of care, the plaintiff must normally present expert testimony to show that

a material issue of fact exists preventing summary judgment. See *id*.

Freedom Healthcare's expert, Dr. Brown, testified that Freedom Healthcare's health care workers satisfied the applicable standard of care. The district court found that Evans did not thereafter satisfy his burden to put forward expert testimony that Freedom Healthcare breached the standard of care. Evidently distracted by its view that Dr. Swanson's testimony contained inconsistencies, the district court determined that there was a "complete failure of proof" by Evans regarding the applicable standard of care. To the contrary, Dr. Swanson opined that there is always the possibility of infection caused by a breach in the preinjection sterile procedure and opined that Evans' infection could not have developed if it were not for a significant breach in sterile technique somewhere along the process. Freedom Healthcare did not challenge Dr. Swanson's expert credentials or file a motion to prevent Dr. Swanson from testifying about his opinion in this area of medicine. See, e.g., *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993); *Schafersman v. Agland Coop*, 262 Neb. 215, 631 N.W.2d 862 (2001). Dr. Swanson was qualified and provided an opinion on the appropriate standard of care for a joint injection, the weight of which opinion should be determined by the finder of fact. The district court erred when it disregarded Dr. Swanson's testimony and granted summary judgment on negligence.

### (b) Res Ipsa Loquitur

Turning to Evans' theory of res ipsa loquitur, the district court found that the development of an infection in a joint following an injection is not "'so palpably negligent'" that negligence should be inferred as a matter of law. From this, the district court concluded there was no genuine issue of material fact regarding Freedom Healthcare's alleged negligence. At the summary judgment stage and on this record, we disagree.

Dr. Brown testified that the risk of infection from a joint injection may be "anywhere between one in 3,000 to one in 50,000," whereas Dr. Swanson testified that he had not encountered or heard of an infection such as Evans' in his career, although infection was theoretically possible where the skin is breached during an injection. The district court reasoned that, however rare, since an infection could occur following this type of procedure, Evans had failed to prove it was a situation to apply res ipsa loquitur. This is a misapplication of res ipsa loquitur at the summary judgment stage.

[6] In medical malpractice cases brought under the res ipsa loquitur doctrine, negligence may be inferred in three situations without affirmative proof: (1) when the act causing the injury is so palpably negligent that it may be inferred as a matter of law, i.e., leaving foreign objects, sponges, scissors, et cetera, in the body, or amputation of a wrong member; (2) when the general experience and observation of mankind teaches that the result would not be expected without negligence; and (3) when proof by experts in an esoteric field creates an inference that negligence caused the injuries. *Keys v. Guthmann*, 267 Neb. 649, 676 N.W.2d 354 (2004). Evans asserts that the circumstances of this case fit into the first situation.

[7] There are three elements that must be met for res ipsa loquitur to apply: (1) The occurrence must be one which would not, in the ordinary course of things, happen in the absence of negligence; (2) the instrumentality which produces the occurrence must be under the exclusive control and management of the alleged wrongdoer; and (3) there must be an absence of explanation by the alleged wrongdoer. See *Roberts v. Weber & Sons, Co.*, 248 Neb. 243, 533 N.W.2d 664 (1995). See, also, *Long v. Hacker*, 246 Neb. 547, 520 N.W.2d 195 (1994). When applicable, the essence of the doctrine is that an inference of negligence arises without further proof and that the facts speak for themselves. *Long v. Hacker, supra*. Res ipsa loquitur is a procedural tool that, if applicable, allows an inference of a defendant's negligence to be submitted to the fact finder,

where it may be accepted or rejected. *Anderson v. Union Pacific RR. Co.*, 295 Neb. 785, 890 N.W.2d 791 (2017).

[8,9] At the summary judgment stage of litigation, when deciding whether res ipsa loquitur applies, a court must determine whether evidence exists from which reasonable persons can say that it is more likely than not that the three elements of res ipsa loquitur have been met. See *McLaughlin Freight Lines v. Gentrup*, 281 Neb. 725, 798 N.W.2d 386 (2011). If such evidence is presented, then there exists an inference of negligence which presents a question of material fact, and summary judgment is improper. *Id*. The court should not weigh the evidence to determine whether res ipsa loquitur applies. *Id*. Instead, the court must determine whether there is sufficient evidence from which reasonable persons could find that it is more likely than not that the three elements of res ipsa loquitur have been proved and that it is therefore more likely than not that there was negligence associated with the event. *Id*.

On appeal, we review the evidence in the light most favorable to the party against whom summary judgment was granted, giving that party the benefit of all reasonable inferences. See *Rodriguez v. Lasting Hope Recovery Ctr.*, 308 Neb. 538, 955 N.W.2d 707 (2021). In so doing, we review the evidence as it pertains to the three elements recited above. The evidence presented by Freedom Healthcare was that it is extremely rare for a joint injection to become infected, and Dr. Swanson opined that the only time an infection such as Evans' could occur is if the sterile preparation was not performed correctly. There is conflicting evidence regarding whether one or two syringes were used. There is evidence that, in the absence of negligence, such infection does not occur. There is evidence that the instrumentality which produced the infection was in the control of Freedom Healthcare. And there is no particular explanation by Freedom Healthcare as to how the infection occurred. The order below appears to judge the weight of such evidence and the credibility of the parties' experts. However, as demonstrated by the evidence to which we refer above, there

exists an inference of negligence under the theory of res ipsa loquitur, which presents a question of material fact for the fact finder, and summary judgment was improperly granted. See *McLaughlin Freight Line v. Gentrup, supra*.

## VI. CONCLUSION

For the foregoing reasons, we reverse the judgment of the district court and remand the cause for further proceedings consistent with this opinion.

Reversed and remanded for further proceedings.