Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
10/21/2022 09:06 AM CDT

Mark D. Elbert, appellant, v. Gary Young
and Keating, O'Gara, Nedved &
Peters, P.C., L.L.O., appellees.

___ N.W.2d ___

Filed July 29, 2022.    No. S-21-211.

1. **Trial: Evidence: Appeal and Error.** A trial court has the discretion to determine the relevancy and admissibility of evidence, and such determinations will not be disturbed on appeal unless they constitute an abuse of that discretion.

2. **Rules of Evidence: Hearsay: Appeal and Error.** Apart from rulings under the residual hearsay exception, an appellate court reviews for clear error the factual findings underpinning a trial court's hearsay ruling and reviews de novo the court's ultimate determination to admit evidence over a hearsay objection or exclude evidence on hearsay grounds.

3. **Summary Judgment: Appeal and Error.** An appellate court affirms a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.

4. ____: ____. In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and gives that party the benefit of all reasonable inferences deducible from the evidence.

5. **Libel and Slander: Appeal and Error.** Whether a communication is privileged by reason of its character or the occasion on which it was made is a question of law, which an appellate court resolves independently of the determination reached by the court below.

6. **Trial: Evidence: Appeal and Error.** An objection based upon insufficient foundation is a general objection. If such an objection is overruled, the objecting party may not complain on appeal unless (1) the ground for exclusion was obvious without stating it or (2) the evidence was not admissible for any purpose.

7. **Hearsay: Words and Phrases.** Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.

8. **Hearsay.** An out-of-court statement is not hearsay if the proponent offers it for a purpose other than proving the truth of the matter asserted.

9. **Libel and Slander.** An absolutely privileged communication is one for which, by reason of its character or the occasion on which it was made, no remedy exists in a civil action for defamation.

10. ____. Absolute privilege attaches to defamatory statements made incident to, and in the course of, judicial or quasi-judicial proceedings if the defamatory matter has some relation to the proceedings.

11. **Appeal and Error.** An appellate court will not consider an argument or theory raised for the first time on appeal. Thus, when an issue is raised for the first time in an appellate court, it will be disregarded inasmuch as a lower court cannot commit error in resolving an issue never presented and submitted to it for disposition.

Appeal from the District Court for Sarpy County: MICHAEL A. SMITH, Judge. Affirmed.

Theodore R. Boecker, Jr., of Boecker Law, P.C., L.L.O., for appellant.

Nathan D. Clark and Andre R. Barry, of Cline, Williams, Wright, Johnson & Oldfather, L.L.P., for appellees.

MILLER-LERMAN, CASSEL, STACY, FUNKE, and FREUDENBERG, JJ., and COFFEY, District Judge.

FUNKE, J.

## INTRODUCTION

Mark D. Elbert, former chief of police for Bellevue, Nebraska, appeals the order of the district court for Sarpy County granting summary judgment to Gary Young and Keating, O'Gara, Nedved & Peter, P.C., L.L.O. (collectively KONP), a law firm that represents the Bellevue Police Officers Association (BPOA) and several BPOA members. The court found that Elbert's defamation claim was not supported by evidence of actual malice or special damages and certain statements attributed to KONP were absolutely privileged. The

court also found that Elbert's false light claim was subsumed in his defamation claim and that his civil conspiracy claim failed for lack of an underlying tort. Elbert appeals. We affirm.

## BACKGROUND

At a meeting on September 13, 2017, BPOA members discussed Elbert's conduct and, by a vote of 72 to 1, expressed "'no confidence'" in him as the chief of police. After the meeting, the BPOA issued a press release drafted by KONP, asserting there was "substantial evidence" Elbert had engaged in "dishonest and deceptive conduct" in carrying out his duties. The press release also claimed that Elbert had initiated multiple internal investigations of union leaders in retaliation for union activity and made "derogatory comments towards women and racial minorities."

KONP subsequently completed an "Allegation/Inquiry/Commendation" (AIC) form, which discussed the allegations in the press release, as well as other alleged dishonesty by Elbert, and filed it with Bellevue. KONP also assisted in drafting two informal complaints that individual Bellevue Police Department officers filed with the Nebraska Commission on Law Enforcement and Criminal Justice (Crime Commission). The substance of both complaints was that Elbert had instructed employees to lie and conceal information.

Elbert filed suit against KONP in September 2018, alleging he was defamed and placed in a false light by the press release, AIC allegations, and Crime Commission complaints. Elbert also alleged KONP engaged in a civil conspiracy to place him in a false light, "harm him in his professional career, and interfere with his [prospective] employment as US Marshall and the ability to continue as a Nebraska Chief of Police."

The parties conducted discovery, during which Elbert responded to interrogatories regarding his defamation and false light claims. Specifically, he responded to an interrogatory asking which statements by KONP were not defamatory, but placed him in a false light, by stating: "See Answer to Interrogatory Number 4. If these statements were not actually

defamatory, at a minimum, they portrayed [Elbert] in a false light because of [KONP's] mischaracterization of the context and the subject [of the] communication." Interrogatory No. 4 asked Elbert which of KONP's statements were either false or portrayed him in a false light. Elbert responded that the press release, AIC allegations, and Crime Commission complaints were the statements he claimed were false or portrayed him in a false light.

There were also depositions wherein counsel for Elbert inquired about certain communications KONP had with BPOA members. Counsel for KONP objected on attorney-client privilege grounds. Elbert's counsel mentioned moving to compel the production of these communications when concluding the depositions of two KONP attorneys, but no motion was filed.

KONP moved for summary judgment on the grounds that as to Elbert's defamation claim, there was no evidence of actual malice or special damages and certain statements attributed to it were absolutely privileged. KONP also asserted that Elbert's false light claim was subsumed in his defamation claim and that his civil conspiracy claim failed for lack of an underlying tort.

The district court held a hearing on KONP's motion for summary judgment, during which Elbert's counsel objected to the admission into evidence of paragraphs 11, 12, and 13 of the affidavit of KONP attorney Gary Young on foundation grounds, paragraph 21 on hearsay and foundation grounds, and "references to alleged statements of clients" on the grounds that KONP had asserted attorney-client privilege as to its communications with BPOA members during discovery. Similar objections were made to the affidavit of KONP attorney Thomas McCarty. The affidavits described, in general terms, the sources of the attorneys' information about Elbert and their belief that the information was true.

At the hearing, Elbert also argued in opposition to KONP's motion for summary judgment, asserting that KONP's statements were made in retaliation for Bellevue's refusal to drop an investigation of a BPOA official. Elbert further argued that

the case did not "fit[] within the context" of *New York Times Company v. Sullivan*, 376 U.S. 254, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964), because KONP was not a "member of the media or the press," Elbert was not a public figure, and the dispute did not involve matters of "public discourse."

The district court overruled Elbert's objections to the affidavits of Young and McCarty and adopted KONP's arguments as to why Elbert's defamation, false light, and civil conspiracy claims fail on summary judgment.

Elbert appealed to the Nebraska Court of Appeals, and we moved the matter to our docket.

## ASSIGNMENTS OF ERROR

Elbert assigns, summarized and reordered, that the district court erred in overruling his objections to the testimony of the two KONP attorneys and in finding that certain statements attributed to KONP were absolutely privileged, that his false light claim was subsumed, and that his claim for civil conspiracy failed.

## STANDARD OF REVIEW

[1,2] A trial court has the discretion to determine the relevancy and admissibility of evidence, and such determinations will not be disturbed on appeal unless they constitute an abuse of that discretion.[1] Apart from rulings under the residual hearsay exception, an appellate court reviews for clear error the factual findings underpinning a trial court's hearsay ruling and reviews de novo the court's ultimate determination to admit evidence over a hearsay objection or exclude evidence on hearsay grounds.[2]

[3,4] An appellate court affirms a lower court's grant of sumary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and

---

[1] *Noah's Ark Processors v. UniFirst Corp.*, 310 Neb. 896, 970 N.W.2d 72 (2022).

[2] *Id*.

that the moving party is entitled to judgment as a matter of law.[3] In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and gives that party the benefit of all reasonable inferences deducible from the evidence.[4]

[5] Whether a communication is privileged by reason of its character or the occasion on which it was made is a question of law, which an appellate court resolves independently of the determination reached by the court below.[5]

## ANALYSIS

### Admission of Testimony

On appeal, Elbert argues that the district court erred in admitting into evidence the affidavits of Young and McCarty over his hearsay objections. Elbert asserts that the affidavits improperly presented BPOA members' opinions about whether Elbert's conduct was discriminatory or retaliatory, and he maintains that KONP should instead have offered affidavits from BPOA members or identified "who said it, when, in what context, etc."[6] Elbert also argues, in the alternative, that the district court erred in not excluding the challenged affidavits on foundational grounds or because KONP sought to rely on the statements of its clients after invoking attorney-client privilege as to its communications with BPOA members during discovery.

As an initial matter, we note that Elbert did not object to paragraphs 11, 12, and 13 of Young's affidavit on hearsay grounds at the hearing before the trial court. Rather, he objected to these paragraphs solely on foundational grounds. Since a party on appeal may not assert a different ground for

---

[3] *Evans v. Freedom Healthcare*, 311 Neb. 336, 972 N.W.2d 75 (2022).

[4] *Id.*

[5] *Funk v. Lincoln-Lancaster Cty. Crime Stoppers*, 294 Neb. 715, 885 N.W.2d 1 (2016).

[6] Brief for appellant at 16.

an objection to the admission of evidence than was offered to the trial court, our review of these paragraphs is limited to determining whether proper foundation was laid.[7]

Elbert asserts that the district court erred in not excluding these paragraphs, along with paragraph 21 of Young's affidavit and McCarty's affidavit, on foundational grounds, because they contain "supposed opinions about whether someone was telling the truth or was believable or was reasonable in their characterizations."[8] We disagree.

[6] An objection based upon insufficient foundation is a general objection.[9] If such an objection is overruled, the objecting party may not complain on appeal unless (1) the ground for exclusion was obvious without stating it or (2) the evidence was not admissible for any purpose.[10] Elbert has not suggested that the ground for exclusion of the affidavits was obvious. Nor has he argued that the affidavits were not admissible for any purpose. As such, the district court did not abuse its discretion in admitting the affidavits over Elbert's foundation objections.

[7] Insofar as Elbert maintains that the challenged affidavits improperly seek to prove the truth of BPOA members' beliefs about whether his conduct was discriminatory or retaliatory, his objection on foundational grounds appears to be tied to, and shade into, his objection on hearsay grounds. Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.[11] Hearsay is not admissible unless otherwise provided for in the Nebraska Evidence Rules or elsewhere.[12]

---

[7] *Lindsay Internat. Sales & Serv. v. Wegener*, 301 Neb. 1, 917 N.W.2d 133 (2018).

[8] Brief for appellant at 18.

[9] *Cotton v. State*, 281 Neb. 789, 810 N.W.2d 132 (2011).

[10] *Id*.

[11] Neb. Rev. Stat. § 27-801(3) (Cum. Supp. 2020).

[12] *State v. Munoz*, 309 Neb. 285, 959 N.W.2d 806 (2021).

As to Elbert's hearsay objections to paragraph 21 of Young's affidavit and to McCarty's affidavit, his argument is equally unavailing because the affidavits are not hearsay. Both affidavits indicated that the information in the press release, the AIC allegations, and the Crime Commission complaints were provided by BPOA members and the attorneys believed the information was true.

[8] By definition, an out-of-court statement is not hearsay if the proponent offers it for a purpose other than proving the truth of the matter asserted.[13] Thus, a statement is not hearsay if the proponent offers it to show its impact on the listener, and the listener's knowledge, belief, response, or state of mind after hearing the statement is relevant to an issue in the case.[14]

Here, KONP offered the challenged affidavits to prove that Young and McCarty "knew, trusted, and believed" the BPOA members who had provided information about Elbert, rather than the truth of either the BPOA members' beliefs about whether Elbert's conduct was discriminatory or retaliatory or the allegations concerning Elbert. KONP's belief in the truth of the BPOA members' statements is relevant to the question of whether it acted with "actual malice," that is, with knowledge that the statements were false or with reckless disregard of whether they were true.[15] As such, the district court did not abuse its discretion in admitting the challenged affidavits over Elbert's hearsay objections.

Finally, Elbert asserts that KONP should be barred from relying on its clients' statements in the affidavits, because it asserted attorney-client privilege when asked about communications with its clients during discovery. Elbert appears to suggest that KONP's objections were sharp practice intended to adversely affect a fair determination of his rights or

---

[13] *Baker-Heser v. State*, 309 Neb. 979, 963 N.W.2d 59 (2021).

[14] See *Noah's Ark Processors v. UniFirst Corp., supra* note 1.

[15] *Moats v. Republican Party of Neb.*, 281 Neb. 411, 796 N.W.2d 584 (2011); *Hoch v. Prokop*, 244 Neb. 443, 507 N.W.2d 626 (1993).

liabilities. However, if Elbert wanted to challenge KONP's assertion of privilege as to its communications with BPOA members, he merely needed to move to compel their production.[16] Though his counsel mentioned a potential motion to compel during the depositions of Young and McCarty, Elbert never filed such a motion. Other courts have similarly declined to "allow[] plaintiffs to lie in the weeds until a motion for summary judgment is filed, and then spring the issue," when they could have taken action to compel production at an earlier date.[17]

## Absolute Privilege

Elbert also argues that the complaints filed with the Crime Commission and the AIC filed with the Bellevue Police Department did not involve judicial or quasi-judicial proceedings and, thus, should not have been afforded absolute privilege by the trial court.

[9,10] An absolutely privileged communication is one for which, by reason of its character or the occasion on which it was made, no remedy exists in a civil action for defamation.[18] Absolute privilege attaches to defamatory statements made incident to, and in the course of, judicial or quasi-judicial proceedings if the defamatory matter has some relation to the proceedings.[19] The relevancy of the defamatory matter is not a technical legal relevancy but instead a general frame of reference and relationship to the subject matter of the action.[20]

---

[16] Cf. *Greenwalt v. Wal-Mart Stores*, 253 Neb. 32, 567 N.W.2d 560 (1997).

[17] *OAO Alfa Bank v. Center for Public Integrity*, 387 F. Supp. 2d 20, 52 n.53 (D.D.C. 2005). See, also, *Clyburn v. News World Communications, Inc.*, 903 F.2d 29 (D.C. Cir. 1990) (plaintiff not appealing district court's denial of motion to compel source's identity).

[18] See *Kocontes v. McQuaid*, 279 Neb. 335, 778 N.W.2d 410 (2010), *abrogated on other grounds, Doe v. Board of Regents*, 280 Neb. 492, 788 N.W.2d 264 (2010).

[19] *Id*.

[20] *Id*.

A century ago, in *Shumway v. Warrick*,[21] we established what has since been characterized as the definition of "quasi-judicial" for purposes of applying absolute privilege when we found that a letter written to the state banking board questioning the integrity of an applicant for a bank charter was absolutely privileged. The board was found to exercise "quasi-judicial powers" because it had a statutory duty to determine the integrity and responsibility of persons applying for charters, and "'[w]hen the law commits to any officer the duty of looking into facts and acting upon them, not in a way which it specifically directs, but after a discretion in its nature judicial, the function is quasi-judicial.'"[22]

More recently, in *Kocontes v. McQuaid*,[23] we found that a letter to the Board of Pardons opposing a pardon application was absolutely privileged in light of the *Shumway* definition, six "attributes" considered by other courts in determining whether a body is quasi-judicial, and the public policy rationale underlying the absolute privilege. We noted that the Board of Pardons has statutory and constitutional authority to consider applications from persons seeking pardons, along with written statements from crime victims, and determine whether to grant relief.[24] We also noted that it can conduct hearings pursuant to its "guidelines" and issue subpoenas pursuant to a statute that subjects witnesses to contempt for noncompliance.[25]

As such, we found that the Board of Pardons fell within the definition in *Shumway* and possessed all six attributes of a quasi-judicial body insofar as it had

> (1) the power to exercise judgment and discretion; (2) the power to hear and determine or ascertain facts and decide; (3) the power to make a binding order and judgment;

---

[21] *Shumway v. Warrick*, 108 Neb. 652, 189 N.W. 301 (1922).

[22] *Id*. at 656, 189 N.W. at 302.

[23] *Kocontes v. McQuaid, supra* note 18, 279 Neb. at 341, 778 N.W.2d at 416.

[24] *Id*.

[25] *Id*. at 347, 778 N.W.2d at 420.

(4) the power to affect the personal or property rights of private persons; (5) the power to examine witnesses, to compel the attendance of witnesses, and to hear the litigation of the issues at a hearing; and (6) the power to enforce decisions or impose penalties.[26] We also found that because a pardon affects "'the public interest in the conviction'" by officially nullifying the legal consequences of a crime, the public interest in free disclosure outweighed the harm to individuals who may be defamed.[27] In other words, the importance of persons speaking freely when communicating with the Board of Pardons is so great that "the law takes the risk of their abusing the occasion and speaking maliciously as well as untruly."[28]

Here, based upon our jurisprudence, we conclude that the informal complaints to the Crime Commission involve quasi-judicial proceedings under the definition given in *Shumway* and the attributes set forth in *Kocontes*. The Nebraska Police Standards Advisory Council, with the review and approval of the Crime Commission, has statutory authority to suspend or revoke law enforcement officers' certificates or diplomas upon finding "[s]erious misconduct," among other things.[29] Members of the public can file informal complaints with the executive director of the Crime Commission, who reviews them and determines whether to file a formal complaint for hearing by the council.[30] The council's regulations provide for it to receive evidence, hear testimony, cause subpoenas to be issued, and make written findings of fact, conclusions of law, and recommendations regarding revocation, which are forwarded to the Crime Commission for final review.[31] The Crime

---

[26] *Id*. at 341, 778 N.W.2d at 416-17.

[27] *Id*. at 352, 778 N.W.2d at 424.

[28] *Id*. at 340, 778 N.W.2d at 416.

[29] Neb. Rev. Stat. § 81-1403(6)(b) (Reissue 2014).

[30] 79 Neb. Admin. Code, ch. 9, §§ 005.06(1) and 006 (2012).

[31] *Id*., §§ 007, 009, and 010.

Commission must then either dismiss the complaint or revoke the certificate upon a finding by clear and convincing evidence that the certificate should be revoked.[32]

We also conclude that the AIC submitted to the Bellevue Police Department similarly involves quasi-judicial proceedings in light of the *Shumway* definition and *Kocontes* attributes. Law enforcement agencies have a statutory duty to adopt policies regarding complaints of officer misconduct and investigate any alleged misconduct that could constitute grounds for revocation or suspension under § 81-1403(6).[33] The Bellevue Police Department's AIC policy, which is included in our record, provides for the receipt of complaints from employees or members of the public. The policy also provides for review of allegations; formal and informal investigations; employee participation; findings of fact; adjudication by officers in the chain of command, with final adjudication by the chief of police; and disciplinary sanctions if the allegations are found to be substantiated. The chief's decision can be formally appealed pursuant to the collective bargaining agreement.

Admittedly, not all attributes noted in *Kocontes* are present as to an AIC. For example, the AIC investigation policy does not provide for subpoenas to be issued or testimony to be taken. However, key factors, most notably, the duty of looking into facts and exercising discretion in acting on them, are present. We also find it persuasive that other courts have taken the view that complaints to police departments' internal affairs divisions are absolutely privileged.[34]

---

[32] *Id.*, § 010.09.

[33] See Neb. Rev. Stat. § 81-1414.14(1) and (2) (Supp. 2021).

[34] See, *Robinson v. Alameda County*, 875 F. Supp. 2d 1029 (N.D. Cal. 2012); *Craig v. Stafford Const., Inc.*, 271 Conn. 78, 856 A.2d 372 (2004); *Magnus v. Anpatiellos*, 130 A.D. 2d 719, 516 N.Y.S.2d 31 (1987); *Gray v. Rodriguez*, 481 So. 2d 1298 (Fla. App. 1986); *Miner v. Novotny*, 304 Md. 164, 498 A.2d 269 (1985); *Lewis v. Benson*, 101 Nev. 300, 701 P.2d 751 (1985); *Putter v. Anderson*, 601 S.W.2d 73 (Tex. App. 1980). Compare *Knight v. Knight*, 1 Neb. App. 430, 497 N.W.2d 692 (1992) (complaints to police about third parties' criminal conduct conditionally privileged).

Public policy considerations further support the application of absolute privilege to Crime Commission and internal affairs complaints. Such complaints involve alleged misconduct by law enforcement and, thus, can be seen to "serve a public function of vital importance by providing a mechanism through which abuses may be reported to the proper authorities, and the abusers held accountable."[35]

Accordingly, having determined that both an informal complaint to the Crime Commission and an AIC with the Bellevue Police Department involve a quasi-judicial proceeding, we consider KONP's statements to be relevant and protected by absolute privilege. Whether KONP acted "as part of [a] plan to destroy the career of a decorated law enforcement officer,"[36] as Elbert alleges, is immaterial. The plaintiff in *Kocontes* claimed the statements opposing his pardon were made "out of vindictiveness,"[37] while in *Shumway*, it was an "admitted fact that . . . the libel defendant was actuated by malice, hatred, and ill will."[38] Nonetheless, absolute privilege was found to apply in both cases.

## REMAINING ASSIGNMENTS OF ERROR

Elbert's remaining assignments of error are that the district court erred in finding his false light claim was subsumed in his defamation claim and that his civil conspiracy claim failed for lack of an underlying tort. Both are without merit.

A person that gives publicity to a matter concerning a natural person that places that person before the public in a false light is subject to liability for invasion of privacy if (1) the false light in which the other was placed would be highly offensive to a reasonable person and (2) the actor had knowledge or acted in reckless disregard as to the falsity of the publicized

---

[35] *Miner v. Novotny, supra* note 34, 304 Md. at 176, 498 A.2d at 275. Cf. *Lewis v. Benson, supra* note 34.

[36] Brief for appellant at 23.

[37] *Kocontes v. McQuaid, supra* note 18, 279 Neb. at 337, 778 N.W.2d at 414.

[38] *Shumway v. Warrick, supra* note 21, 108 Neb. at 657, 189 N.W. at 303.

matter and the false light in which the other would be placed.[39] However, if a plaintiff asserts claims of both defamation and false light invasion of privacy based on the same statement, the false light claim is subsumed within the defamation claim and is not separately actionable.[40] A false light claim can only survive as a separate cause of action if it alleges a nondefamatory statement.[41]

Elbert's complaint makes repeated references to KONP's alleged "scheme to portray [him] in a false light." However, his response to KONP's interrogatories suggests that he is relying on the same statements as the basis for both his defamation and false light claims, with the statements "at a minimum" portraying him in a false light if they "were not actually defamatory." What is more important, when KONP argued at the summary judgment hearing that the false light claim was subsumed because Elbert "has alleged that each of the statements in his complaint are defamatory," Elbert did not offer any opposition. The district court agreed with KONP's position that the false light claim was subsumed.

[11] On appeal, Elbert maintains that he made a "distinct claim that he was placed in a false light"[42] and cites, as an example, KONP's statement that his use of the nickname "Diesel" to describe a female city employee reflected gender bias. This argument fails because Elbert raises it for the first time on appeal, and an appellate court will not consider an argument or theory raised for the first time on appeal.[43] Thus, when an issue is raised for the first time in an appellate court, it will be disregarded inasmuch as a lower court cannot commit error in resolving an issue never presented and submitted

---

[39] Neb. Rev. Stat. § 20-204 (Reissue 2012).

[40] *Steinhausen v. HomeServices of Neb.*, 289 Neb. 927, 857 N.W.2d 816 (2015).

[41] *Moats v. Republican Party of Neb., supra* note 15.

[42] Brief for appellant at 19.

[43] *Eletech, Inc. v. Conveyance Consulting Group*, 308 Neb. 733, 956 N.W.2d 692 (2021).

to it for disposition.[44] The same is true as to Elbert's civil conspiracy claim.

A civil conspiracy is a combination of two or more persons to accomplish by concerted action an unlawful or oppressive object, or a lawful object by unlawful or oppressive means.[45] A "conspiracy" is not itself a separate and independent tort, but, rather, depends upon the existence of an underlying tort.[46] Without such underlying tort, there can be no cause of action for conspiracy to commit the tort.[47]

Elbert alleged in his complaint that KONP conspired to place him in a false light, "harm him in his professional career," and "interfere with his [prospective] employment as US Marshall and the ability to continue as a Nebraska Chief of Police." However, when KONP argued in the summary judgment hearing that Elbert's claim for conspiracy failed because of the lack of an underlying tort, Elbert did not offer any opposition based on either his false light invasion of privacy claim or a claim of tortious interference with economic advantage. The district court agreed with KONP that the civil conspiracy failed for lack of an underlying tort.

On appeal, Elbert bases his civil conspiracy claim primarily upon his false light claim, asserting that KONP conspired with BPOA officers to "retaliate against him and portray him in a false light" because of Bellevue's "refusal to drop" its investigation of a BPOA official.[48] This claim must fail insofar as his false light claim fails. However, Elbert also mentions having pled "attempt to engage in tortious interference with [his] employment."[49] This fleeting reference is unavailing, given that

---

[44] *Id.*

[45] *George Clift Enters. v. Oshkosh Feedyard Corp.*, 306 Neb. 775, 947 N.W.2d 510 (2020).

[46] *Id.*

[47] *Id.*

[48] Brief for appellant at 21.

[49] *Id.* at 22.

Elbert did not argue tortious interference before the trial court in opposing KONP's motion for summary judgment, and an appellate court will not consider an argument or theory raised for the first time on appeal.

## CONCLUSION

Elbert's claims that the district court erred in admitting certain testimony, finding his false light claim was subsumed, finding his civil conspiracy claim failed, and finding certain statements were absolutely privileged are without merit. As a result, the judgment of the district court is affirmed.

Affirmed.

Heavican, C.J., and Papik, J., not participating.