IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

LARRISON V. SCHUBERT

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

MICHAEL LARRISON AND ELIZABETH LARRISON, APPELLANTS,

V.

JOHANNA SCHUBERT, M.D., APPELLEE.

Filed December 17, 2024.    No. A-24-025.

Appeal from the District Court for Douglas County: W. RUSSELL BOWIE III, Judge. Affirmed.

Greg Garland, of Garland MedMal, L.L.C., and Michael W. Milone and Wendy A. Wussow, of Koukol, Johnson, Schmit & Milone, L.L.C., for appellants.

David A. Blagg, Brien M. Welch, and Michael R. Faz, of Cassem, Tierney, Adams, Gotch & Douglas, for appellee.

PIRTLE, BISHOP, and ARTERBURN, Judges.

ARTERBURN, Judge.

### INTRODUCTION

Michael Larrison and Elizabeth Larrison brought a claim for medical malpractice and loss of consortium against Johanna Schubert, M.D., a radiologist involved in Michael's medical care. Before trial, the district court ruled that two of the Larrisons' medical experts could not testify to the standard of care for radiologists but could testify for purposes of causation of Michael's injuries. The Larrisons had a third medical expert who was permitted to testify to the standard of care. The jury ultimately found that the Larrisons failed to meet their burden of proof and returned a verdict for Schubert. On appeal, the Larrisons argue that the district court erred by excluding portions of their medical experts' testimony. For the reasons that follow, we affirm.

- 1 -

BACKGROUND

On November 28, 2019, Michael was transported by ambulance to Bergan Mercy Hospital in Omaha for severe pain in his lower back and stomach. Michael had a history of pulmonary embolisms—blockages of arteries in the lungs—and deep vein thrombosis. He was admitted to the emergency department and underwent several tests. Medical staff captured several computed tomography angiograms (CT scans) to determine the cause of Michael's symptoms. Schubert, a board-certified radiologist who was working at the hospital when Michael was admitted, reviewed Michael's CT scan and concluded that there was no evidence of pulmonary embolisms or mesenteric artery occlusion. In addition, Schubert observed no indication of an issue with Michael's spine based on her review of the CT scan.

Nevertheless, Michael was admitted to the hospital overnight due to his high International Normalized Ratio (INR), which measures the time it takes for blood to clot. Having a high INR put Michael at risk of a major bleeding event. The next day, hospital staff conducted more testing. Magnetic resonance imaging (MRI) was performed and revealed pressure on Michael's spinal cord. The MRI specifically showed that an extensive epidural hematoma was present around the T5-T12 region of Michael's spine.

Michael underwent a decompressive thoracic laminectomy—a type of spinal surgery—to address the hematoma. After the surgery, it was determined that the epidural hematoma caused paraplegia at the T9 level of Michael's spine. Michael was initially unable to move from the waist down. After participating in rehabilitation for 2 months, Michael was able to walk with a walker. However, at the time of the trial, Michael was unable to urinate without a catheter and could not have sex with his wife.

On May 3, 2021, Michael and his wife, Elizabeth, filed a complaint against Schubert in the district court for Douglas County. The Larrisons alleged that Schubert committed malpractice when she failed to recognize and report the spinal hematoma on Michael's CT scans. Specifically, the Larrisons alleged that had Schubert discovered and immediately reported the presence of the hematoma on the CT scan, the surgery to relieve the problem would have occurred earlier, thus avoiding the partial paralysis that Michael has experienced. Elizabeth also alleged that she sustained consortium losses because of Schubert's malpractice.

On July 20, 2023, the court entered an order for jury trial and set procedural deadlines in the case. The deadline for pretrial motions was November 4, 2023, and the deadline for pretrial hearings was November 20. The jury trial was set to commence on December 4. Our record indicates that neither party opposed these deadlines.

On October 20, 2023, Schubert filed a motion in limine, which she later amended. A hearing on the amended motion was held on November 1. The parties agreed to everything contained in Schubert's motion except for the request:

> [t]o prohibit [the Larrisons'] experts, Dr. Arthur M. Pancioli, a board certified emergency medicine physician, and Dr. Randy F. Davis, a board certified orthopedic surgeon, from testifying in the above captioned matter. In their depositions, both physicians clearly state that they are not board certified in diagnostic radiology and do not offer any opinions as to the standard of care of defendant Johanna Schubert, M.D. who is a board certified radiologist. As such, their testimony is irrelevant and immaterial. Dr. Pancioli clearly states

- 2 -

in his deposition that he cannot testify as to the standard of care of a board certified radiologist in Omaha, Nebraska in 2019. . . . In addition, Dr. Randy Davis further stated that he cannot testify to the standard of care of a board certified diagnostic radiologist in Omaha, Nebraska in 2019.

At the hearing, the depositions of both Pancioli and Davis were received into evidence for the court's review. Schubert did not seek to exclude any testimony from Kendall Jones, M.D., a board-certified diagnostic radiologist and neuroradiologist who was identified as the Larrisons' third medical expert.

Through counsel, Schubert argued that Pancioli and Davis, who were both medical experts for the Larrisons, admitted in their depositions that they were not radiologists and could not testify to the standard of care applicable to Schubert in this case. During Pancioli's deposition, Schubert's attorney asked the following questions, and Pancioli gave the following answers:

Q. Okay. And whether the board-certified diagnostic radiologist was below the standard of care, you can't really say that because that's not your education, training, or experience, true?

A. Correct. I can't opine on their standard of care. I can just opine that I think I see [an acute hematoma on the CT scan] and I think it should have been picked up.

Q. Okay. So, I just want to make sure I'm clear before we get done here today. And that is you can't say that the board-certified diagnostic radiologist is below the standard of care for failing to note what you noted at T12, lumbar 1, and you can't say—or you're saying that the board-certified emergency medicine physician is not negligent for failure to note that? Do I have that right?

A. Yes.

Similarly, during Davis' deposition, Schubert's attorney asked the following questions, and Davis gave the following answers:

Q. Okay. So are you critical at all of [Schubert] for not thinking of a potential for spinal hematoma, given the clinical—limited clinical information she knew, which was basically reason for the exam, chest pain, shortness of breath and that the emergency room physician was looking for the [pulmonary embolism].

A. I am not—I am not a radiologist . . . so, you know, I cannot testify as to the standard of care of what a radiologist should do. It is my opinion that with history of chest pain and a variety of other things, there are findings that even I can see as a spine surgeon on that [CT scan] that are not artifacts, but they are defects and would certainly raise my suspicion. And I have to combine what I know as a surgeon. But, you know, I don't know what information, specifically, a radiologist can ask for. It's hard to tell because I'm not a radiologist.

Q. Okay. And you bring up a good point, and thank you for doing that. You're not going to be testifying that my client, as a board certified diagnostic radiologist, fell below the standard of care; true?

A. No, that is correct.

Schubert thus argued that the testimony from either expert concerning what they saw in the CT scans was irrelevant because neither expert could say that Schubert's failure to observe the hematoma violated the standard of care for radiologists. Schubert also argued that allowing Pancioli and Davis to testify regarding what they observed on Michael's CT scans would be prejudicial and would allow the jury to speculate as to whether Schubert violated the standard of care.

The Larrisons objected to the motion. They argued that this portion of the motion in limine was an untimely "*Daubert* motion" concerning the scientific reliability of each expert's testimony. See *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). See, also, *Schafersman v. Agland Coop*, 262 Neb. 215, 631 N.W.2d 862 (2001). The Larrisons also framed the testimony of their medical experts as a weight of the evidence issue that should be given to the jury as opposed to an admissibility issue that the court had to decide.

The Larrisons admitted that Pancioli and Davis were not retained as standard of care experts but argued that their testimony would not contribute to standard of care issues. Based on Pancioli's deposition, the Larrisons asserted that Pancioli would testify that when reviewing the CT scan, Schubert missed blood in the spinal canal and should have ordered an MRI for further review. However, the Larrisons stated that Pancioli would not testify that Schubert violated the standard of care. Based on Davis' deposition, the Larrisons asserted that Davis would testify that he saw an abnormality on the CT scan and would have taken additional steps to determine what the abnormality was. The Larrisons stated that Davis would not testify that Schubert violated the standard of care, either. The Larrisons stated that Jones would be the only expert to testify that Schubert violated the standard of care when she failed to observe the hematoma on Michael's spine. The Larrisons concluded that Pancioli and Davis were merely offering testimony about whether there was "something [in the spinal canal that] needed to be reported."

Schubert's counsel responded:

it [is] kind of an artifice for the [Larrisons] to say, yeah, they're not going to have any standard of care opinions, but then they're going to say I see something there. And it should have been reported. And it wasn't. And it should have been. Well, that's the same thing as saying standard of care. I mean . . . both of them will say I can't tell you under the magic words that this was a violation of the standard of care by [Schubert], but I am going to say, yeah, I see something there. And she should have said something. Well, that's the same thing.

However, Schubert's counsel agreed that once Jones testified that the standard of care was not met, Pancioli and Davis could testify as to causation, specifically what result could have occurred had the hematoma been discovered in Schubert's review of the CT scan. After the motion was submitted, the court took the matter under advisement.

On November 15, 2023, the court issued its order finding that Pancioli and Davis could not testify to their review of Michael's CT scans and whether Schubert met the applicable standard of care. However, their testimony was deemed admissible for purposes of causation. On November 26, the Larrisons filed a motion for reconsideration. Our record does not contain an order ruling on that motion.

Trial began on December 4, 2023. As a preliminary matter, the Larrisons again motioned the court to reconsider its order limiting the testimony of Pancioli and Davis. The Larrisons argued that the late timing of the court's ruling negatively impacted their case. The court stated that "allowing that testimony will just invite the jury to speculate about what's there and what's not there." The court overruled the motion.

At trial, redacted versions of Pancioli's and Davis' depositions were played for the jury. Additionally, the Larrisons presented expert testimony from Jones concerning the standard of care. Jones testified that Schubert deviated from the standard of care when she failed to observe a spinal hematoma around the T5 to T12 region on Michael's CT scans. Jones testified that the delay in diagnosis of the spinal hematoma allowed it to grow larger.

Schubert testified in her own defense. Both she and two other board-certified radiologists testified that they did not observe any spinal hematoma on the CT scan images and that there was no failure to adhere to the standard of care on Schubert's part. Additional medical experts were called by Schubert to testify regarding other aspects of the case including causation. After both parties presented their evidence and exhibits, the matter was submitted to the jury. The jury returned a unanimous verdict in favor of Schubert, finding that the Larrisons had not met their burden of proof. The court subsequently entered judgment in favor of Schubert.

The Larrisons appeal.

## ASSIGNMENTS OF ERROR

The Larrisons make several assignments of error concerning the district court's decision to exclude the testimony of Pancioli and Davis as it related to the CT scans and the standard of care. Consolidated, restated, and reordered, the Larrisons assign that the district court erred by (1) failing to conduct a *Daubert/Schafersman* analysis, (2) preventing Pancioli and Davis from testifying to their "factual, personal knowledge with expert background about what they observed" on the CT scans, and (3) harming their substantial rights by entering judgment for Schubert without permitting the jury to hear each expert's full testimony.

## STANDARD OF REVIEW

We review de novo whether the trial court applied the correct legal standards for admitting an expert's testimony, and we review for abuse of discretion how the trial court applied the appropriate standards in deciding whether to admit or exclude an expert's testimony. *Carson v. Steinke*, 314 Neb. 140, 989 N.W.2d 401 (2023). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

## ANALYSIS

The Larrisons argue that the district court erred by granting Schubert's motion in limine to exclude the testimony of Pancioli and Davis as it related to the CT scans and the standard of care. Their primary contention is that the district court did not conduct a *Daubert/Schafersman* analysis to determine whether the testimony was admissible. Schubert counters that the court correctly found that the testimony was inadmissible because it was irrelevant, and thus, the court was not required to review the *Schafersman* factors.

*Admissibility of Expert Testimony.*

We begin with a general overview of expert witness qualifications. Under Neb. Rev. Stat. § 27-702 (Reissue 2016) and *Daubert/Schafersman* jurisprudence, before admitting expert opinion testimony, the trial court must (1) determine whether the expert's knowledge, skill, experience, training, and education qualify the witness as an expert; (2) if an expert's opinion involves scientific or specialized knowledge, determine whether the reasoning or methodology underlying the testimony is valid; (3) determine whether that reasoning or methodology can be properly applied to the facts in issue; and (4) determine whether the expert evidence and the opinions related thereto are more probative than prejudicial. See, *Gonzales v. Nebraska Pediatric Practice*, 26 Neb. App. 764, 923 N.W.2d 445 (2019); *Schafersman v. Agland Coop*, 262 Neb. 215, 631 N.W.2d 862 (2001); *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). Under this evaluation, the trial court acts as a gatekeeper to ensure the evidentiary relevance and reliability of an expert's opinion. *Gonzales v. Nebraska Pediatric Practice, supra*. The purpose of the gatekeeping function is to ensure that the courtroom door remains closed to "junk science" that might unduly influence the jury, while admitting reliable expert testimony that will assist the trier of fact. *Id.* at 788, 923 N.W.2d at 462.

The Nebraska Supreme Court has held that the *Schafersman* factors are not applied when deciding whether expert testimony is inadmissible because of a lack of foundation. See *Carson v. Steinke, supra*. Instead, *Schafersman* factors are applied when expert testimony concerning the standard of care is challenged on the basis of scientific unreliability. *Carson v. Steinke, supra*. Determining whether expert testimony is scientifically reliable requires an assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and applicable to the facts in issue. *Id.*

Under Neb. Rev. Stat. § 44-2810 (Reissue 2021), expert testimony offered to establish the standard of care in a medical malpractice case is admissible only if its proponent can demonstrate the expert's familiarity with the relevant standard of care in the defendant's community or a similar community. See *Carson v. Steinke*, 314 Neb. 140, 989 N.W.2d 401 (2023). Section 44-2810 generally defines the standard of care as "the ordinary and reasonable care, skill, and knowledge ordinarily possessed and used under like circumstances by members of his [or her] profession engaged in a similar practice in his [or her] or in similar localities." Expert testimony concerning the standard of care should not be received if it appears the witness is not in possession of such facts as will enable him or her to express a reasonably accurate conclusion as distinguished from a mere guess or conjecture. *Carson v. Steinke, supra*. The burden is on the proponent of the standard of care testimony to demonstrate that the expert is qualified to testify about such matters. *Id.*

*District Court Did Not Abuse Discretion in*
*Excluding Testimony of Pancioli or Davis.*

Applying the principles outlined above, we find that the district court applied the correct legal standard for determining admissibility and did not abuse its discretion in excluding those portions of Pancioli's and Davis' testimony that related to the standard of care. Expert testimony should not be received into evidence if it is evident that the witnesses do not possess such facts that enable them to express a reasonable, accurate conclusion as distinguished from a mere guess.

- 6 -

See *Menkens v. Finley*, 251 Neb. 84, 555 N.W.2d 47 (1996). Without an adequate basis of facts, witnesses should not be allowed to give an opinion. *Id.* In this case, the district court took the experts at their word that they did not possess facts that enabled them to express a conclusion as to the standard of care. This was the basis of the court's exclusion order.

In their appellate brief, the Larrisons do not directly address their experts' admissions that they are not qualified to testify about the applicable standard of care. However, they nonetheless contend that "[i]f admitted, [Pancioli's and Davis'] observations of and concerns about Michael's CT scans would have corroborated Dr. Jones' testimony that Dr. Schubert breached the standard of care and harmed Michael." Brief for appellants at 47. So, even though Pancioli and Davis admit their observations do not relate to the issue of whether the standard of care was violated, the Larrisons still seek to utilize their testimony for that very purpose.

The Larrisons generally argue that the court erred by abdicating its gatekeeping function and failing to conduct a *Daubert/Schafersman* analysis. This contention is without merit. Schubert did not object to the testimony of Pancioli or Davis because of their underlying reasonings or methodologies. Schubert objected to their testimony because the experts admitted that they lacked the necessary background and knowledge to provide reliable opinions on the standard of care applicable to radiologists when reviewing CT scans. Thus, Schubert argued that any testimony the experts presented regarding their observations of the CT scans would be irrelevant.

In their reply brief, the Larrisons counter that because Schubert and the district court excluded the testimony for relevancy reasons and not foundational reasons, the *Daubert/Schafersman* framework is still applicable. We disagree. We recognize that the motion in limine was based on a relevancy objection. But, in arguing the motion, Schubert articulated the foundational issue and how it was interrelated with relevance. We agree that in the instant case, the relevancy of the proffered testimony is intertwined with and dependent upon whether foundation exists to support the opinions contained therein.

It is a well-settled principle that irrelevant evidence is inadmissible. *In re Estate of Walker*, 315 Neb. 510, 997 N.W.2d 595 (2023). But evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Id.* at 521, 997 N.W.2d at 604 (quoting Neb. Rev. Stat. § 27-401 (Reissue 2016)). A trial court has the discretion to determine the relevancy and admissibility of evidence, and such determinations will not be disturbed on appeal unless they constitute an abuse of that discretion. *Elbert v. Young*, 312 Neb. 58, 977 N.W.2d 892 (2022).

In this case, both experts admitted that they lacked the foundation necessary to testify to the standard of care for radiologists. Consequently, any testimony concerning their reviews of the CT scans or Schubert's review of the scans would be irrelevant, as it would not make the determination of Schubert's adherence to or violation of the standard of care any more or less probable. It would confuse the jury and lead them to question whether Schubert should have made the same observations not because she failed to perform at a level consistent with the applicable standard of care, but because other medical experts believe they saw something suspicious on the CT scan. Thus, as the testimony was inadmissible for foundational and relevancy reasons, the district court was not required to conduct a *Daubert/Schafersman* analysis. The *Schafersman*

factors are not applied when deciding whether expert testimony is inadmissible because of a lack of foundation. See *Carson v. Steinke*, 314 Neb. 140, 989 N.W.2d 401 (2023).

The Larrisons also take issue with the district court's "limited reasoning" for excluding the contested testimony. They seem to argue that the court should have provided a detailed written analysis of whether the testimony was admissible under § 27-702 and the *Daubert/Schafersman* framework. However, this argument was not raised in their motion for reconsideration, nor was it specifically assigned in their assignments of error. To be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued. *Wright v. Southwest Airlines Co.*, 315 Neb. 911, 2 N.W.3d 186 (2024). Thus, we need not consider this argument.

The Larrisons alternatively assign that the court should have allowed Pancioli and Davis to testify to "their factual, personal knowledge with expert background about what they observed on Michael Larrison's CT scans." Brief for appellants at 44. The Larrisons assert that in this regard, Pancioli and Davis would have been lay witnesses. This assignment fails. It is not enough to present the testimony of a doctor who would have acted differently, or who is willing to express the opinion that the operation should have been performed differently. *Kortus v. Jensen*, 195 Neb. 261, 237 N.W.2d 845 (1976). To be relevant, standard of care testimony must establish the medically accepted standard used in similar localities. *Id.* See, also, *Carson v. Steinke, supra*. Pancioli and Davis would have offered the same testimony regardless of how the Larrisons labeled them as witnesses. Both doctors would have testified about Michael's CT scans, the abnormality they each observed in those scans, and what they would have done in response to those observations. That testimony indicates Pancioli and Davis would have acted differently if they had been the ones reviewing Michael's scans, but it does not establish the medically accepted standard applicable to Schubert when she was reviewing the scans. Thus, the testimony was properly excluded, as it does not support a finding that Schubert violated the standard of care.

Additionally, in medical malpractice cases, expert testimony by a medical professional is normally required to establish causation and the standard of care. *Simon v. Drake*, 285 Neb. 784, 829 N.W.2d 686 (2013). Thus, even if the court could have accepted this reclassification of witnesses, as lay witnesses, neither Pancioli nor Davis could have testified to the standard of care. This assignment or error fails.

Finally, the Larrisons argue that the district court's exclusion of Pancioli's and Davis' testimony harmed their substantial rights. They argue that without this evidence, they had "little ammunition in the battle of the medical experts." Brief for appellants at 48. They also argue that the timing of the court's exclusion prejudiced them. We disagree with both contentions.

It is self-evident that the mere number of witnesses does not necessarily determine the question of the preponderance of the evidence. *Nielson v. Kammerer*, 128 Neb. 57, 257 N.W. 534 (1934). The exclusion of evidence is ordinarily not prejudicial where substantially similar evidence is admitted without objection. *O'Brien v. Cessna Aircraft Co.*, 298 Neb. 109, 903 N.W.2d 432 (2017). In this case, the Larrisons had a third doctor, Jones, testify as their standard of care expert at trial. Jones testified that Schubert violated the standard of care by failing to observe and immediately report the spinal hematoma in the CT scans. This testimony is substantially similar to the testimony the Larrisons hoped to present to the jury through Pancioli and Davis. The proffered testimony from Pancioli and Davis stated that each doctor observed an abnormality on the scan, and had they discovered it in context of treating a patient, they would have reported the

abnormality immediately. Thus, even if the excluded testimony was admissible, the exclusion was not prejudicial.

Further, the timing of the district court's ruling on the motion in limine was not prejudicial. In July 2023, the court designated November 4 as the deadline for pretrial motions and November 20 as the deadline for pretrial hearings. The trial was set to begin on December 4. The hearing on Schubert's motion in limine occurred timely on November 1. Two weeks later, on November 15, the court issued its order sustaining Schubert's motion.

The Larrisons did not oppose the scheduling order. The order allowed for a hearing to take place as late as 2 weeks before the first day of trial. Here, the hearing was held over a month prior to trial and the ruling was issued 3 weeks before trial. This timeline was not untenable or unreasonable given the scheduling order. If the Larrisons desired more time between the pretrial hearings and trial, they should have objected to the scheduling order. Further, the Larrisons had the opportunity to remedy any alleged surprise arising from the court's ruling by requesting a continuance, which they did not. This assignment of error fails.

CONCLUSION

The district court did not abuse its discretion when it excluded portions of Pancioli's and Davis' testimony based on the admissions they made in their depositions that they could not testify to the standard of care applicable in this case. This exclusion was based on foundational and relevancy grounds, not on scientific unreliability, and thus, the court was not required to conduct a *Daubert/Schafersman* analysis. Furthermore, the Larrisons were not prejudiced by this exclusion. We affirm the order of judgment in favor of Schubert.

AFFIRMED.