IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

WEHLAND V. WEHLAND

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

TIMOTHY N. WEHLAND, APPELLANT,

V.

SHEILA R. WEHLAND, APPELLEE.

Filed February 18, 2025.    No. A-24-155.

Appeal from the District Court for Saunders County: CHRISTINA M. MARROQUIN, Judge. Appeal dismissed.

Amie C. Martinez, of Anderson, Creager & Wittstruck, P.C., L.L.O., and Katherine Taylor, Senior Certified Law Student, for appellant.

Joseph A. Wilkins, of Mattson Ricketts Law Firm, L.L.P., for appellee.

PIRTLE, ARTERBURN, and WELCH, Judges.

ARTERBURN, Judge.

## INTRODUCTION

This appeal arises out of the dissolution of the marriage of Timothy N. Wehland and Sheila R. Wehland. Timothy appeals from an order nunc pro tunc entered by the district court for Saunders County correcting a qualified domestic relations order (QDRO). For the reasons set forth below, we find that we do not have jurisdiction over this appeal. Therefore, the appeal is dismissed.

## BACKGROUND

The parties' marriage was dissolved by the district court in February 2014. The dissolution decree states, in relevant part: "[Sheila] shall receive, from [Timothy's] BSNF [sic] Railway 401(k), a marital equalization payment in an amount of $50,634,000 [sic] via a Qualified Domestic Relations Order regarding the same. [Sheila] shall be responsible for any fees associated with the

- 1 -

transfer or disbursement of the equalization payment." In 2014, Timothy filed an unopposed motion for an order nunc pro tunc, asking the court to modify the dissolution decree to state that Sheila was entitled to an equalization payment of $50,634, not a payment of over $50 million. The court granted his motion and entered an order nunc pro tunc.

On March 17, 2014, the court issued a QDRO as contemplated by the dissolution decree. The QDRO reiterates Sheila's right to a marital equalization payment from Timothy's retirement plan and identifies the name of said plan as "BNSF VanGuard 401(k) plan 092106." The QDRO also states, in relevant part:

> [Sheila's] portion of the benefits described above shall be segregated and separately maintained in Account(s) established on his/her behalf and shall additionally be credited with any interest and investment income (or losses) attributable thereon from the Plan's valuation date immediately preceding February 3, 2014, until the date of total distribution to [Sheila].

The QDRO was prepared by Sheila's attorney and "[a]pproved as to form and content" by Timothy's counsel, who also signed the document.

On July 17, 2023, over 9 years later, Sheila filed a motion for an order nunc pro tunc. In her motion, Sheila states that she attempted to withdraw her equalization payment from Timothy's retirement plan, but that her request could not be granted until two deficiencies in the QDRO were revised or clarified. The plan administrator made the following requests:

> (1)     Please modify Section 4 to state the legal name of the plan, which is "BNSF Railway Company Non-Salaried Employees 401(k) Retirement Plan".
> (2)     In Section 7, please provide a date as of which the Alternate Payee's assignment is effective. The parties may consider the date that the Plan establishes and funds a separate account for the Alternate Payee ("Segregation Date") as the Assignment Date.

Sheila asked the court to enter an order nunc pro tunc to (1) correct the name of the retirement plan to "BNSF Railway Company Non-Salaried Employees 401(k) Retirement Plan," and (2) state that the effective date was March 17, 2014, the date the QDRO was originally entered. Sheila also advised the court that she contacted the attorney that represented Timothy during the 2014 divorce proceedings but was informed that the attorney no longer represented Timothy.

On August 7, 2023, the court held a hearing on Sheila's motion. Though notice was provided, Timothy did not appear. After receiving evidence and argument from Sheila, the court granted her motion and entered an order nunc pro tunc correcting the retirement plan name as requested and adding a sentence that explicitly stated that the effective date of the QDRO was March 17, 2014.

On August 15, 2023, Timothy, having obtained new counsel, filed a motion to vacate or set aside the order nunc pro tunc. Timothy asserted that the case was closed when Sheila filed her motion, and to properly reopen it, she should have filed a complaint for modification. He also argued that he did not receive personal service of the hearing date. Thus, Timothy concluded that the court did not have personal jurisdiction or subject matter jurisdiction to enter an order nunc pro tunc.

Additionally, Timothy argued that Sheila's request was not consistent with the dissolution decree. He argued that because the dissolution decree did not provide for any gains or losses on Sheila's equalization payment, the QDRO "substantively modified the language of the original award" by providing such a right to her. Timothy therefore requested that the court vacate the order nunc pro tunc.

On October 23, 2023, the court held a hearing on Timothy's motion. The court ultimately vacated its August 2023 order nunc pro tunc "pending final resolution of the matter." In its written order, the court states, in relevant part:

> [t]he Court asks the parties to reschedule this matter to allow time for presentation of evidence. In the interim, the Court vacates the Order Nunc Pro Tunc entered herein on the 7th day of August 2023 and stays the implementation of any Qualified Domestic Relations Order in this matter until further order of the Court.

An evidentiary hearing was scheduled for November 27, 2023.

At the evidentiary hearing, Timothy again argued that the dissolution decree awarded Sheila only a specific monetary amount as her equalization payment and did not award her any interest or gains on that sum. Timothy asserted that the QDRO's language entitling Sheila to interest created a right that, in fact, did not exist. Thus, Timothy concluded that the QDRO was not enforceable and that Sheila's motion for an order nunc pro tunc actually sought a modification of the decree of dissolution. Timothy also asserted that the decree did not provide an effective date for the QDRO, and as such, one could not be identified without an action to modify. Timothy did not address the request to correct the name of the retirement plan.

Sheila disagreed and argued that the changes she sought via an order nunc pro tunc were essentially already contained in the QDRO, albeit with a slight change to the name of the retirement plan. Regarding Timothy's objections to Sheila receiving gains on her equalization payment, Sheila argued that this language was appropriately contained in the QDRO because the QDRO was meant to further clarify the property division set out in the dissolution decree. Sheila asserted that the QDRO did not change or contradict any language within the decree. She also pointed out that in 2014, Timothy's counsel reviewed and approved of the QDRO before the court signed it. Sheila asserted that this meant that there was no ambiguity as to what the parties intended or whether she was entitled to any growth in the equalization payment between the date that it was ordered and the date she sought to remove it from Timothy's retirement account.

Once all the evidence and arguments were submitted, the court made the following statement: "I don't think the parties disagree as to the proper name of the account. I don't think we're even here to contest that. Right? I mean, everybody agrees that we need to include the proper name on the current account." Neither party objected to or disagreed with the court's synopsis of that issue. Thereafter, the court took the matter under advisement.

On December 2, 2023, the court issued an order denying Timothy's motion to vacate and granting Sheila's motion for an order nunc pro tunc. In its order, the court stated:

> [Timothy] concedes that the name of the retirement plan is in error and that the correct plan name is the BNSF Railway Company Non-Salaried Employees 401(k) Retirement Plan. [Timothy] objects to the addition of the effective date of March 17, 2014 being included in the QDRO. The objection is two-fold. First, the provision for the credit of interest or losses

- 3 -

is not a term in the Decree, and therefore should not be a term in the QDRO. Secondly, that the requested change is not a clerical error, oversight, or omission for which a nunc pro tunc as appropriate pursuant to Neb. Rev. Stat. § 25-2001.

The court did not find either of Timothy's objections persuasive. The court first found that the dissolution decree anticipated the entry of a QDRO to satisfy the property settlement judgment and that the parties stipulated to the terms of the QDRO. The court stated: "Although the explicit language of how the Alternate Payee would receive the vested and/or non-vested portions of the plan were not included in the Decree, they non-the-less [sic] are incorporated therein by the parties' assent to the Order." (Referencing the QDRO.) The court then noted that neither party timely appealed the dissolution decree or the QDRO, thus rendering the decree and QDRO part of the final judgment. As such, the court declined to consider further Timothy's first objection which contended that Sheila was not entitled to any growth on the amount of money awarded to her from Timothy's retirement account.

Regarding Timothy's second objection concerning the inclusion of an effective date, the court determined that the QDRO's effective date was undeniably March 17, 2014, the date the QDRO was entered. The court found that the omission of the effective date in the QDRO did not alter the judgment awarded by the dissolution decree. Further, the court found that including the effective date did not modify the original order "because the effective date of that order is, and remains, March 17, 2014." The court concluded that explicitly including the effective date in the QDRO would be a clerical correction only.

Thus, in its order, the court corrected the name of the retirement plan as requested by Sheila and added the following sentence: "The Alternate Payee's assignment becomes effective March 17, 2014." All other provisions of the QDRO were ordered to remain in full effect. On December 13, 2023, Timothy filed a motion to reconsider, alter or amend, or motion for a new trial. A hearing was held on January 29, 2024, and on February 5, 2024, the court denied Timothy's motion.

Timothy appeals.

ASSIGNMENTS OF ERROR

Timothy assigns, restated, that the district court erred by (1) granting Sheila's motion for an order nunc pro tunc and (2) failing to find that the 2014 QDRO was void and noncompliant with the dissolution decree.

STANDARD OF REVIEW

When reviewing a question of law, an appellate court resolves the question independently of the conclusion reached by the trial court. *McReynolds v. RIU Resorts & Hotels*, 293 Neb. 345, 880 N.W.2d 43 (2016).

ANALYSIS

It is the power and duty of an appellate court to determine whether it has jurisdiction over the matter before it, irrespective of whether the issue is raised by the parties. *In re Estate of Scaletta*, 312 Neb. 953, 981 N.W.2d 568 (2022). Sheila has raised the issue of jurisdiction on

appeal. She argues that Timothy is actually challenging the substance of the district court's 2014 QDRO, and therefore, his appeal is well past the 30 day deadline.

Timothy disagrees and asserts that his appeal concerns the December 2023 order nunc pro tunc. He specifically argues that to amend the name of the retirement plan and to add an effective date, Sheila should have requested a modification of the dissolution decree, not an order nunc pro tunc. In other words, he argues that the order entered by the district court makes material amendments, and thus, it is not a proper nunc pro tunc order.

We begin with a brief overview of nunc pro tunc orders. District courts have the power to vacate and modify their judgments and orders under Neb. Rev. Stat. § 25-2001 (Cum. Supp. 2022). Section 25-2001(3) allows courts to issue nunc pro tunc orders:

> Clerical mistakes in judgments, orders, or other parts of the record and errors therein arising from oversight or omission may be corrected by the court by an order nunc pro tunc at any time on the court's initiative or on the motion of any party and after such notice, if any, as the court orders.

The purpose of an order nunc pro tunc is to correct clerical or formal errors to make the record correctly reflect the judgment actually rendered by the court. *In re Interest of Luz P. et al.*, 295 Neb. 814, 891 N.W.2d 651 (2017). A nunc pro tunc order reflects now what was actually done before but was not accurately recorded. *Id.* The power to issue nunc pro tunc orders is not only conveyed by statute but is also inherent in the power of the courts. *Id.*

The Nebraska Supreme Court has held:

> An order nunc pro tunc does not change the time to appeal the order or judgment that it amends, because it only corrects clerical or formal errors. But where an order or judgment is amended in a material and substantial respect, the time for appeal runs from the date of the amendment. Because an order nunc pro tunc merely makes the record reflect what the court actually decided in the original order or judgment and does not make any substantive or material change to the order or judgment, the order relates back to the date of the original order or judgment. Thus, a nunc pro tunc order cannot extend the time for a party to appeal the order or judgment which the nunc pro tunc order corrects.

*In re Interest of Luz P. et al.*, 295 Neb. at 826-27, 891 N.W.2d at 661. In this case, to determine whether we have jurisdiction, we must determine whether the order Timothy has appealed from is truly an order nunc pro tunc.

The district court's December 2023 order changes the name of the retirement plan and adds a sentence indicating that the effective date of the QDRO is March 17, 2014, the day the QDRO was entered. We find that these corrections address clerical errors. They do not make substantive amendments to the QDRO or to the dissolution decree.

To the extent that Timothy asserts that the change of the retirement plan name constitutes a material and substantial alteration of the QDRO, we find that this argument fails because he raises it for the first time on appeal. The district court stated at the evidentiary hearing and in its December 2023 order that neither party contested the retirement plan name change Sheila requested. Timothy did not assert this issue during the hearing, nor did he object to the court's statement at the end of the hearing. He also failed to raise this issue in his motion for

reconsideration, to alter or amend, or for a new trial. An appellate court will not consider an argument or theory raised for the first time on appeal. *Elbert v. Young*, 312 Neb. 58, 977 N.W.2d 892 (2022). Thus, when an issue is raised for the first time in an appellate court, it will be disregarded inasmuch as a lower court cannot commit error in resolving an issue never presented and submitted to it for disposition. *Id.*

Further, even if Timothy had properly raised this issue, we find that the name change would constitute a correction of a clerical error. The QDRO was issued to properly administer the division of Timothy's retirement plan. Using an incorrect name for the retirement plan was a clerical error that prohibited Sheila from receiving her portion of the marital estate. Thus, the court's correction of the name was properly executed in a nunc pro tunc order.

The same is true as to the court's addition of a single sentence noting that the effective date of the QDRO is the date that the QDRO was entered. Under Neb. Rev. Stat. § 25-1301(3) (Cum. Supp. 2022), the entry of a judgment, decree, or final order occurs when the clerk of the court places the file stamp and date upon the judgment, decree, or final order. For purposes of determining the time for appeal, the date stamped on the judgment, decree, or final order shall be the date of entry. § 25-1301(3).

The date stamped on the QDRO is March 17, 2014. Thus, the date of entry is March 17, 2014. The portion of the December 2023 order that adds a sentence stating that Sheila's assignment became effective on March 17, 2014, confirms the obvious: that the award outlined in the QDRO became effective on the day the QDRO was entered. The addition reflects what was actually done before, but was apparently not recorded to the satisfaction of the retirement plan administrator in order to facilitate Sheila's equalization payment. Thus, an order nunc pro tunc clarifying the effective date was the proper vehicle to satisfy what the plan administrator believed to be an omission.

Having found that the district court's December 2023 order was, in fact, an order nunc pro tunc correcting only clerical mistakes, we conclude that we do not have jurisdiction over this appeal. Because an order nunc pro tunc merely makes the record reflect what the court actually decided in the original order or judgment and does not make any substantive or material change to the order or judgment, the order relates back to the date of the original order or judgment. *In re Interest of Luz P. et al.*, 295 Neb. 814, 891 N.W.2d 651 (2017). The December 2023 nunc pro tunc order relates back to the date of the QDRO, which was entered on March 17, 2014. To vest an appellate court with jurisdiction, a party must file a notice of appeal within 30 days of the judgment, decree, or final order from which the party is appealing. Neb. Rev. Stat. § 25-1912(1) (Cum. Supp. 2022).

It is apparent from the record and Timothy's arguments to this court that Timothy would like to set aside the provision in section 7 of the QDRO that awards Sheila any monetary gain (or loss) in the value of her equalization payment between the plan's valuation date and the date of distribution to her. Timothy clearly believes that this provision is inconsistent with the decree of dissolution. However, Timothy not only failed to contest this provision at the time the QDRO was drafted, he, in fact, agreed to it. His efforts to revive this issue by way of contesting Sheila's motion for an order nunc pro tunc are without merit. Timothy did not file a notice of appeal within 30 days of the entry of the QDRO. Thus, we do not have jurisdiction.

## CONCLUSION

Because we lack appellate jurisdiction, we dismiss the appeal.

APPEAL DISMISSED.